UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Fond du Lac Bumper Exchange Inc., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Jui Li Enterprise Company Ltd.; Tong Yang Industry Co. Ltd.; Taiwan Kai Yih Industrial Co., Ltd.; Gordon Auto Body Parts; Gordon Auto Parts USA Corp.; Auto Parts Industrial, Ltd.,<br><br>Defendants. | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF THE SHERMAN ACT**<br><br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff Fond du Lac Bumper Exchange Inc. ("Plaintiff") brings this action on its own behalf and on behalf of all those similarly situated to recover damages and obtain injunctive relief for Defendants' violations of the federal antitrust laws against the Defendants as follows:

## INTRODUCTION

2. Plaintiff brings this antitrust class action on behalf of direct purchasers of aftermarket automotive sheet metal parts ("AM Sheet Metal Parts"), also known as AM crash parts, in the United States. AM Sheet Metal Parts include, but are not limited to, hoods, doors, fenders, bonnets, floor panels, trunk assemblies, trunk lids, tailgates, roof panels, and reinforcement parts.

3. Defendants' violations stem from their artificial manipulation of the market for aftermarket sheet metal products. While controlling the market for aftermarket sheet metal parts, the Defendants have simultaneously conspired to (1) reduce output of aftermarket sheet metal parts and (2) fix prices at supra-competitive prices.

4. Beginning in at least 2003, Defendants met, agreed and conspired to reduce output on the parts and to set inflated prices for these same parts. Defendants' conduct harmed, and continues to harm purchasers in the United States who pay anticompetitive prices for AM Sheet Metal Parts.

## JURISDICTION AND VENUE

5. Plaintiff brings this action under Sections 4 and 16 of the Clayton Act, (15 U.S.C. §§ 15 and 26) to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6. This action also seeks injunctive relief against Defendants to prevent them from further violating Section 1 of the Sherman Act, as hereinafter alleged.

7. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

8.  Venue is proper in this Judicial District pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C § 1391(b), (c) and (d) because, during the Class Period, several Defendants transacted business, were found, or had agents in this District, and the Defendants affected interstate trade and commerce as described below throughout the United States, including in this District.

9.  This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States; (b) participated in the sale and distribution of AM Sheet Metal Parts throughout the United States; (c) had substantial contacts with the United States; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## PLAINTIFF

10.  Plaintiff Fond du Lac Bumper Exchange Inc. is a company duly organized and existing under the laws of Wisconsin with its principal place of business located in Fond du Lac, Wisconsin. During the relevant period, Plaintiff purchased AM Sheet Metal Parts directly from one or more Defendants. As a result of the conspiracy, Plaintiff was injured during the relevant period in its business or property by reason of the antitrust violations alleged herein.

## DEFENDANTS

### The TYG Defendants

11.  Defendant Tong Yang Industry Co. Ltd. ("TYG") is a corporation organized and existing under the laws of Taiwan with its principal place of business located at No. 98 Section 2, An Ho Road, Tainan, R.O.C. During the Class Period, TYG manufactured in Taiwan and then exported, distributed and sold AM Sheet Metal Parts to Class members in the United States. TYG engages in the development, manufacture and sale of vehicle parts and accessories, including AM Sheet Metal Parts for sale around the world, including the United States. TYG was established in 1952 and operates plants in Kaohsiung, Hsin-Chu, Hainan and Wuhan.

12.  Defendant Taiwan Kai Yih Industrial Co. Ltd. ("TKY") is a corporation organized and existing under the laws of Taiwan with its principal place of business located at

20-3, Nan Shih Lane, Lu Kang, Chang-Hwa Hsien, Taiwan 638. During the Class Period, TKY manufactured in Taiwan and then exported, distributed and sold AM Sheet Metal Parts to Class members in the United States. TKY is or has been a wholly or partially owned subsidiary of Defendant TYG, and is the largest automotive sheet metal producer in Taiwan. TKY claims to be the largest manufacturer of AM Sheet Metal Parts, holding the dominant share of that market. TKY manufactures AM Sheet Metal Parts in Taiwan and exports for sale around the world, including the United States.

### The Gordon Defendants

13. Defendant Gordon Auto Body Parts ("Gordon Taiwan") is a corporation organized and existing under the laws of Taiwan with its principal place of business located at No 48 Nieh His Road, Lu-Tsu Hsiang, Tao-Yuan Hsien, Taiwan, R.O.C. During the Class Period, Gordon Taiwan manufactured in Taiwan and then exported, distributed and sold to the Class, throughout the United States, AM Sheet Metal Parts. Gordon was established in 1986 and is one of the biggest manufacturers of metal replacement crash parts in the world with more than four hundred employees. The term "Gordon Taiwan" includes any wholly or partly owned subsidiary of Gordon Taiwan involved in the market for AM Sheet Metal Parts whose business operations were controlled by Gordon Taiwan at any time during the Class Period.

14. Defendant Gordon Auto Parts USA Corp. ("Gordon USA") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 26398 Deere Court, Murrieta, CA 92562. During the Class Period, Gordon USA distributed and sold throughout the United States AM Sheet Metal Parts. Gordon USA is a wholly or partially owned subsidiary of Defendant Gordon Taiwan. During the Class Period, Gordon USA sold AM Sheet Metal Parts to Class members in the United States. Defendants Gordon Taiwan and Gordon USA, along with any of their wholly owned subsidiaries, successors, predecessors, parents, or affiliates, are collectively referred to as "Gordon."

### The API Defendants

15. Defendant Auto Parts Industrial Ltd. ("API") is a corporation organized and existing under the laws of Taiwan with its principal place of business located at No. 456, Sec. 2, Kwoling Rd., 7 Lin, Kwo Ling Li, Jhongli City, Taoyuan County 320, Taiwan R.O.C. API was founded in 1979. During the Class Period, API manufactured in Taiwan and then exported, distributed and sold to the Class, throughout the United States, AM Sheet Metal Parts. The term "API" includes any wholly or partly owned subsidiary of API involved in the market for AM Sheet Metal Parts whose business operations were controlled by API at any time during the Class Period.

### Defendant Jui Li

16. Defendant Jui Li Enterprise Co. Ltd. ("Jui Li") is a corporation organized and existing under the laws of Taiwan with its principal place of business located at No. 22, Kaonan Road, Jenwu Hsiang, 814 Kaohsiung, Kao-hsiung shih, Taiwan, R.O.C. During the Class Period, Jui Li manufactured in Taiwan and then distributed and sold AM Sheet Metal Parts to Class members in the United States. Jui Li is a leading manufacturer of AM Sheet Metal Parts, which it manufactures in Taiwan and China and exports for sale around the world, including the United States. The term "Jui Li" includes any wholly or partly owned subsidiary of Jui Li involved in the market for AM Sheet Metal Parts whose business operations were controlled by Jui Li at any time during the Class Period.

### Agents and Co-Conspirators

17. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

18. All acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendants' business affairs.

19. On information and belief, various other companies and individuals, not named as Defendants in this Complaint, participated as co-conspirators in the acts complained of herein, and performed acts and made statements in furtherance of such conspiracy.

## FACTUAL ALLEGATIONS

20. The automotive aftermarket industry in the United States is vast because millions of vehicles are sold annually in the United States market. As vehicles age or are involved in collisions they may require aftermarket parts.

21. AM Sheet Metal Parts represent a significant portion of the entire aftermarket automotive parts market in the United States.

22. The named Defendants manufacture over 95% of all AM Sheet Metal Parts sold in the United States and their anticompetitive conduct substantially affects interstate trade and commerce in the United States and causes antitrust injury in the United States.

23. New replacement auto body parts such as fenders, bumpers and hoods are parts referred to as "aftermarket" or "functionally equivalent" parts when made by a company other than the original equipment manufacturer ("OEM").

24. AM Sheet Metal Parts are typically replaced following collisions or as a result of wear and tear, and have the same specifications as OEM parts.

25. AM Sheet Metal Parts constitute a market distinct from other automotive sheet metal products, including (1) those supplied by third parties to OEMs for incorporation into new vehicles; (2) OEM replacement parts made by or for the manufacturers of automobiles; and (3) used or refurbished automotive sheet metal products. Wholesale prices of OEM replacement parts are typically much more expensive than comparable aftermarket sheet metal parts. For these reasons, and others more fully set forth in this Complaint, aftermarket products and

products of OEMs, used or refurbished products, are not reasonably interchangeable substitutes from the point of view of the purchaser, nor do they compete with each other.

26. AM Sheet Metal Parts are highly fungible. Purchasers decide on a product almost exclusively based on price. There are no other reasonably economical substitutable products for AM Sheet Metal Parts. Price fixing and market allocation are particularly pernicious within this highly concentrated, fungible market for which adequate substitutes do not exist. One example of the fungibility of the products in this market is the assignment of interchangeable part numbers, whereby a single part number is assigned to a sheet metal product manufactured by several Defendants

27. Typically, when an order is placed by a body shop with a plaintiff for an AM Sheet Metal Part, a brand is not specified. For example, when a customer orders from a Class member a hood for a 2000 Ford Focus, the customer does not request a certain manufacturer or specify whether the hood comes from Jui Li, Gordon, TKY or API. Customers often require, however, that the part be certified by CAPA, a requirement that creates additional barriers to entry into the United States sheet metal manufacturing market.

28. There are significant barriers to entry in the market for AM Sheet Metal Parts and these barriers have facilitated Defendants' collusion. These include substantial research and development costs, the development and maintenance of an extensive distribution system, obtaining a supply of sheet metal, and the investment in large tools and dies that can fabricate or "stamp" sheet metal into the proper shapes.

29. Even if a would-be competitor seeks to enter the market, it cannot survive because the Defendants conspire to temporarily price cut the competing products sold by the new market entrant. Once the would-be competitor is sufficiently undercut and eliminated from the market, the Defendants resume their conspiracy to artificially fix prices at a supra-competitive rate.

30. These barriers to entry allowed the Defendants to engage in their conspiracy to artificially manipulate the market without fear of competition from a new market player.

31. Defendants AM-parts industry implemented a sophisticated international marketing strategy, away from exclusive reliance on low prices to attract customers.

32. Defendants cooperated with each other during the Class Period to escape price competition in the AM Sheet Metal Parts, thus achieving very high profitability.

33. The Defendants, since at least 2003, mapped out comprehensive pricing fixing and output schemes, including limiting supply. The Defendants did this because reducing supply increased Defendants' ability to inflate prices and increase their profit margins.

34. The Defendants were continually motivated to maintain this cartel because of the conspiracy's upward affect on revenues. Defendants' revenues jumped each year during their conspiracy.

35. The goal of the conspiracy was to increase the profit margin by two to three fold. The conspiracy was successful as profit margins increased during the class period as a result.

36. Defendants are and were at all relevant times horizontal competitors at the manufacturing level that sold and continue to sell their products directly to Plaintiff and the Class in the United States. Defendants, respectively, and collectively, conspired to fix the prices of, limit the output of, and artificially manipulate the market for the importation, sale and distribution throughout the United States of AM Sheet Metal Parts.

37. Beginning at least as early as January 1, 2003 and continuing up to the present, Defendants and their co-conspirators combined and conspired to unreasonably restrain competition in interstate commerce in the importation, sale and distribution of AM Sheet Metal Parts in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

38. The purpose and effect of Defendants' price fixing conspiracy was to eliminate competition among and raise prices between themselves and to eliminate customer choice by establishing artificially high and noncompetitive prices for AM Sheet Metal Parts in the United States. This price fixing agreement constitutes a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1) in that it eliminates competition and customer choice.

## ANTICOMPETITIVE EFFECTS OF VIOLATION ON PLAINTIFF AND THE CLASS

39. The conduct of Defendants described in this Complaint produced antitrust injury, and unless restrained, will continue to produce the following anticompetitive effects, among others:

    (a)    competition in the manufacture, distribution and sale of AM Sheet Metal Parts in the United States was and continues to be substantially and unreasonably restricted, lessened, foreclosed and eliminated;

    (b)    barriers to entry into the production, distribution and sale of AM Sheet Metal Parts in the United States were raised;

    (c)    prices for customers seeking AM Sheet Metal Parts in the United States rose and will continue to do so;

    (d)    customers seeking AM Sheet Metal Parts in the United States are, and will be, deprived of choice with respect to price and vendor/manufacturer; and

    (e)    the importation, distribution and sale of AM Sheet Metal Parts in the United States will continue to be artificially restrained.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

40. Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently, through acts of commission and omission, concealed their unlawful conduct.

41. Defendants falsely attributed the cause for the price increases as higher input costs, such as the costs of steel from sources in the U.S. and China, with the intention of concealing the true nature of their coordination.

42. Neither Defendants nor their co-conspirators told Plaintiff or other Class members that they were fixing prices or allocating markets. Accordingly, Plaintiff and Class members could not have discovered the violations alleged herein earlier until shortly before filing this Complaint in the actions comprising this litigation because Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in

furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

43. Defendants and their co-conspirators engaged in a successful price-fixing conspiracy, which they affirmatively concealed by, *inter alia*: (a) meeting secretly to discuss prices, customers and markets of AM Sheet Metal Parts sold in the United States and elsewhere; (b) using methods of communication in furtherance of the alleged conspiracy that were designed to avoid detection; (c) giving pretextual reasons for price increases on AM Sheet Metal Parts; and (d) agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme.

44. As a result of Defendants and their co-conspirators' fraudulent concealment, all applicable statutes of limitations affecting the Plaintiff and the Class's claims have been tolled. Plaintiff and the Class members did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws. Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection and affirmatively conceal such violations.

45. Because the contract, combination, or conspiracy was kept secret by the Defendants, Plaintiff was unaware of the fact that prices of AM Sheet Metal Parts were secretly raised, fixed, maintained or stabilized as alleged herein.

46. As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by Plaintiff and the members of the Class.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities that purchased AM Sheet Metal Parts in the United States, and its territories and possessions, directly from a Defendant between at least as early as January 1, 2003 and the present (the "Class Period"). This class excludes any judicial officer who is assigned to hear any aspect of this action, governmental entities, Defendants, co-conspirators, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

48. There are at least hundreds of Class members as above described, the exact number and their identities being known by Defendants, making the Class so numerous and geographically dispersed that joinder of all members in impracticable.

49. There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

　(a)　Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of AM Sheet Metal Parts and/or engaged in market allocation for those products sold in the United States, and its territories and possessions.

　(b)　The identity of the participants in the conspiracy;

　(c)　The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

　(d)　Whether the alleged conspiracy violated Section 1 of the Sherman Act;

　(e)　Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class; and

(f) The effect of Defendants' conspiracy on the prices of AM Sheet Metal Parts sold in the United States and its territories and possessions during the Class Period.

50. Plaintiff is a direct purchaser of AM Sheet Metal Parts and its interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is a member of the Class, has claims that are typical of the claims of the Class members, and will fairly and adequately protect the interests of the members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

51. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

52. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

53. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. The Class is readily definable and is one for which records should exist in the files of Defendants and their co-conspirators, and prosecution as a class action will eliminate the possibility of repetitious litigation. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## CAUSE OF ACTION

### (Violation of Section 1 of the Sherman Act – 15 U.S.C. § 1)

55. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

56. Beginning at least as early as January 1, 2003, and continuing thereafter, Defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for AM Sheet Metal Parts in the United States, and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

57. The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise and maintain, or stabilize prices for AM Sheet Metal Parts and/or engage in market allocation for those services in the United States, its territories and possessions.

58. In formulating and effectuating the contract, combination or conspiracy, Defendants and their co-conspirators unlawfully combined and conspired to, among other acts:

(a) agree to charge prices at certain levels and otherwise to fix, increase, maintain and/or stabilize prices of AM Sheet Metal Parts and/or allocate the market;

(b) exchange information on prices and sales volumes;

(c) implement and monitor the conspiracy among cartel members;

(d) market AM Sheet Metal Parts as being available at the agreed upon prices;

(e) restrict output of Aftermarket Automotive Sheet Metal products; and

(f) sell AM Sheet Metal Parts at the agreed-upon prices.

59. The activities described above have been engaged in by Defendants and their co-conspirators for the purpose of effectuating the unlawful agreements to fix, maintain, raise and/or stabilize prices of AM Sheet Metal Parts and/or allocate the market for those products.

60. The conspiracy had its intended effect, as Defendants benefited from their collusively-set price raises, as described herein.

61. Defendants' unlawful conduct resulted in artificially high prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class for AM Sheet Metal Parts.

62. Plaintiff and members of the Class paid more for AM Sheet Metal Parts than they would have paid in a competitive marketplace.

63. Plaintiff seeks to recover for these overcharge damages.

64. As a direct and proximate result of Defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase AM Sheet Metal Parts than they would have paid absent Defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A. That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B. That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

C. That judgment be entered for Plaintiff and members of the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class, and pre and post-judgment interest at the highest rate allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1) continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

(2) communicating or causing a communication to any other person engaged in the manufacture, distribution or sale of any relevant product except to the extent necessary in connection with a bona fide sales transaction between the parties to such communications.

E. That Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all triable issues.

Dated: September 4, 2009

K. Scott Wagner (SBN 1004668)
**HALE & WAGNER, S.C.**
205 East Wisconsin Avenue, Suite 300
Milwaukee, Wisconsin 53202
**Telephone:** 414.278.7000
**Facsimile:** 414.278.7590
**Email:** ksw@halewagner.com

Vincent J. Esades
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, Minnesota 55403
**Telephone:** 612.338.4605
**Facsimile:** 612.338.4692

**ATTORNEYS FOR CLASS PLAINTIFFS**