# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FOND DU LAC BUMPER EXCHANGE, INC.,**
        **Plaintiff,**

    v.                                      Case No. 09C0852

**JUI LI ENTERPRISE COMPANY, LTD., et al.,**
        **Defendants.**

**VEHIMAX INTERNATIONAL, LLC,**

        **Plaintiff,**
    v.

                                              Case No. 10C0224

**JUI LI ENTERPRISE COMPANY, LTD., et al.,**

        **Defendants.**

## DECISION AND ORDER

Plaintiffs, Fond du Lac Bumper Exchange, Inc. and Vehimax International, LLC, American purchasers of sheet metal aftermarket auto parts ("AM Parts"), bring these, now consolidated, putative class actions alleging that defendants, Taiwanese manufacturers of such parts, and their American subsidiaries, violated Section 1 of the Sherman Anti-Trust Act by entering into an agreement to fix the prices of many AM Parts and to engage in other anti-competitive conduct. Before me now are a variety of motions asserted by defendants directed at plaintiffs' first amended complaint.

## I. BACKGROUND

Plaintiffs allege that defendants Taiwan Kai Yih Industrial Co. Ltd. ("TYK"), Gordon Auto Body Parts ("Gordon"), Auto Parts Industrial Ltd. ("API") and Jui Li Enterprise Co., Ltd. ("Jui Li"), are Taiwanese manufacturers of AM Parts, that defendant TYG Products, L.P. ("TYGP") is an American distributor of such parts, that both TYK and TYGP are subsidiaries of the Tong Yang Group ("TYG"), a Taiwanese conglomerate, and that defendant Cornerstone Auto Parts, LLC ("Cornerstone") is an American subsidiary of API and a distributor of AM Parts. Plaintiffs further allege that defendants control over 95 percent of the United States AM Parts market and that they violate Section 1 of the Sherman Act by agreeing to set the prices of many AM Parts and to engage in other anti-competitive behavior such as curtailing the number of parts that they manufacture and jointly developing the tools required to manufacture such parts. Plaintiffs allege that defendants' agreement and the ensuing anti-competitive conduct caused the prices of many AM Parts sold in the United States to increase significantly.

I will state additional allegations in the course of the decision.

## II. DISCUSSION

**A.    Subject Matter Jurisdiction.**

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants first move to dismiss for lack of subject matter jurisdiction. Plaintiffs contend that I have federal question jurisdiction under 28 U.S.C. § 1331 because the case arises under federal law. However, defendants argue that under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") the case falls outside the jurisdiction of United States courts.

In addressing defendants' jurisdictional challenge, I assume that plaintiffs' allegations are true. Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009). However, to the extent that factual issues are raised, I may look beyond the jurisdictional allegations and weigh the relevant evidence. Id. If defendants present evidence suggesting that I lack jurisdiction, plaintiffs must come forward with evidence establishing jurisdiction. United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003). I will find jurisdiction if plaintiffs demonstrate that it is more probable than not that I have jurisdiction. NFIC v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir. 1995).

> Under the FTAIA, the Sherman Act
>
> shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless – (1) such conduct has a direct substantial and reasonably forseeable effect . . . on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations . . . and (2) such effect gives rise to a claim under the provisions of this Act, other than this action.

15 U.S.C. § 6(A). Thus, as a result of the FTAIA, federal courts do not have jurisdiction over most cases involving foreign commerce. F. Hoffmann-La Roche Ltd v. Empagran S.A., 542 U.S. 155, 158 (2004). However, the FTAIA does not bar jurisdiction if the conduct at issue involves import trade or commerce or has a direct, substantial, and reasonably foreseeable effect on import trade or commerce. Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002).

I conclude that plaintiffs' complaint and additional submissions are sufficient to establish both that defendants' alleged conduct involves import trade or commerce and that it has a direct, substantial and reasonably forseeable effect on import trade or

3

commerce. Defendants' alleged conduct involves import trade or commerce in several respects. First, plaintiffs allege that a large percentage of defendants' AM Parts, e.g., 87% of TYK's AM Parts, wind up in the United States. Plaintiffs also allege that TYK sells AM Parts directly to TYGP, its American affiliate. Finally, plaintiffs present information from U.S. Customs records indicating that defendants ship millions of dollars of AM Parts to the United States. Among this information is material identifying defendant Gordon as a consignee, i.e., recipient of AM Parts. The information is based on bills of lading compiled by a company whose business is to compile data based on Customs records. Defendants argue that I should not consider this information, but I conclude that it is admissible as an exception to the hearsay rule. See Fed. R. Evid. 803(17) (making admissible "published compilations generally used and relied upon by the public or by persons in particular occupations"). The declaration of Ryan Peterson is sufficient to establish that the compilation is of the type specified in the Rule. Thus, based on the above-described activities, it is reasonable to conclude that defendants' alleged conduct involves import trade or commerce.

Even assuming that defendants' alleged conduct does not involve import trade or commerce, it surely has a direct, substantial and reasonably foreseeable anticompetitive effect on import trade or commerce. This is so because defendants are alleged to have unlawfully agreed both to set the prices of many AM Parts in the United States and to limit the availability of such parts. Given that defendants are further alleged to control over 95% of the American market for AM Parts, it is reasonable to infer that defendants' alleged agreements have a significant impact on import trade or commerce. For example, defendants' alleged conduct significantly impacts the number of AM Parts available to any

4

importer into the American market unconnected to defendants, as well as the prices such importer must pay for such parts.

Finally, as required by the FTAIA, the anticompetitive effect of defendants' alleged conduct gives rise to plaintiffs' claim. Thus, the FTAIA does not bar federal jurisdiction over the present case.

**B.     Sufficiency of Complaint**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), respectively, defendants move to dismiss plaintiffs' complaint and for judgment on the pleadings. In order to survive defendants' motions, plaintiffs must allege enough facts to make their claim plausible. London v. RBS Citizens, N.A., 600 F.3d 742, 745 (7th Cir. 2010). Their complaint must permit the reasonable inference that defendants are liable for the misconduct alleged. Ashcroft v. Iqbal,129 S. Ct. 1937, 1949 (2009). In assessing defendants' motions, I take all of plaintiffs' allegations as true and draw all reasonable inferences in plaintiffs' favor. Reger Dev. LLC v. Nat'l City Bank, 592 F.3d 759, 763 (7th Cir. 2010). In order to state a claim under Section 1 of the Sherman Act, plaintiffs must allege enough facts to suggest that defendants entered into an unlawful agreement. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

As stated, plaintiffs allege that defendants entered into an unlawful agreement to set the prices of many AM Parts sold in the United States and to engage in other anti-competitive conduct such as reducing the availability of many AM Parts and sharing the tools used to produce such parts. Plaintiffs further allege that they were injured as a result of such agreements by having to pay higher prices for many AM Parts and through reduced choice in the market. I conclude that plaintiffs have alleged enough facts

5

suggesting that defendants entered into one or more unlawful agreements to survive defendants' motions.

As factual support for their claim, plaintiffs allege the following: that for historical reasons, Taiwan became the manufacturing center of AM Parts; as the result of a decision in a class action lawsuit in 2000 which enabled consumers to compel insurance companies to pay for replacement parts manufactured by the original manufacturer, the American market for AM Parts shrunk significantly; that subsequently, defendants ceased to compete as they had previously but instead began to cooperate and to agree to engage in unlawful anti-competitive behavior; that on several occasions defendants met secretly and agreed to simultaneously increase the prices of certain AM Parts sold in the United States; that one such meeting occurred in March, 2004 and another on March 18, 2008; that at the latter meeting, defendants agreed to a floor on prices for certain AM Parts beneath which no defendant would sell, and further agreed to jointly raise prices and to establish penalties for defendants who did not comply with the agreed-on terms. Plaintiffs also allege that defendants entered into agreements which committed them to participate in other anti-competitive conduct including curtailing the production of many AM parts and allocating market share. Plaintiffs allege that pursuant to such agreements beginning in 2003 defendants TYK, Jui Li and Gordon undertook to jointly develop the molds and dies used to manufacture AM Parts and that in April, 2004 defendants TKY, API, Jui Li and Gordon undertook to jointly develop the tools used to press sheet metal AM Parts.

Plaintiffs allege that the result of defendants' agreement involving production techniques was to eliminate competition and facilitate uniform pricing, and that the result of the agreement regarding joint development of tools was that non-uniform tools would

6

stand idle and the production of certain AM Parts would be funneled to one or two defendants and that the prices of more than 1,000 AM parts increased. Plaintiffs further allege that in October 2005 TKY, Jui Li and API formed a strategic marketing alliance to strengthen their negotiating power, and that in November 2006, TYG, TKY, Jui Li, and Gordon agreed to jointly invest in the production of parts developed by China Steel Corporation, their steel supplier.

As a result of defendants' unlawful agreements, plaintiffs allege that plaintiffs' costs and defendants' profits both increased significantly. Plaintiffs allege, for example, that before defendants entered into the agreements, they sold Chevy Cavalier fenders for $9 but for $42 afterward; and that before defendants entered into the agreements they sold Ford Focus hoods for $63 but for $95 afterward. Plaintiffs further allege that the financial statements of defendant Gordon indicate that during the relevant period Gordon increased the prices of AM Parts by 106%.

As additional support for their claim, plaintiffs cite the public statements of several of defendants' executives. For example, plaintiffs cite a 2003 article in the Taiwan Economic News in which TYG President Raymond Wu explained how the concentrated market structure for AM Parts allowed defendants to engage in coordinated pricing:

> Now the world's strongest AM auto-parts production citadel, according to [Raymond] Wu, Taiwan comes close to monopolizing the global AM parts market. . . . In the past, Wu explains, most AM-parts makers competed with one another by cutting prices no matter how strong the global demand was, to "steal" market share from each other, but now the situation has changed, makers have abandoned this approach, and the profit margins of major local AM-parts makers parallel or even outstrip those of high-tech product makers on the island. . . . [TYK] closely cooperates with local counterparts to escape the blood-shedding price competition, thus achieving very high profitability, Wu explains.

7

(Am. Compl. ¶ 30.) Plaintiffs' further cite a 2004 article in the Taiwan Economic News in which a representative of TYG acknowledged that in North America TYG "does not compete with its major rivals – all from Taiwan, but has been trying to form a strategic alliance to jointly develop the world's largest single market." (Id. at ¶ 32.) Plaintiffs also cite a statement by a Gordon Vice President attributing Gordon's considerable revenues in 2004 and 2005 to defendants' agreements which "effectively ended the price-cutting competition." (Id. at 34.)

Finally, plaintiffs allege that the nature of the AM Parts market was highly conducive to the kind of cooperative anti-competitive behavior which they allege defendants engaged in. Plaintiffs allege for example that the AM Parts market is highly concentrated, that barriers to entering the market are very high, that AM Parts are fungible and that there are few substitutes for such parts.

As stated, based on the above-discussed factual allegations I conclude that plaintiffs' complaint is sufficient to survive defendants' motions. Plaintiffs allege enough facts to suggest that discovery will reveal the presence of an unlawful agreement or agreements between defendants. Defendants contend that plaintiffs fail to allege sufficient facts to proceed against API, TYPG or Cornerstone. However, plaintiffs allege that these defendants participated in the secret meetings and were parties to the unlawful agreement or agreements. Plaintiffs further allege that as the result of the agreements TYPG and Cornerstone distributed AM Parts in the United States at unlawfully established prices.

Defendants also argue that the four year statute of limitations provided in 15 U.S.C. § 15(b) bars claims accruing prior to September 3, 2005, four years before plaintiffs filed their complaint. The statute of limitations is an affirmative defense and is not generally

addressed pursuant to a motion directed at the pleadings. On a motion directed at the pleadings, the only question is "whether there is any set of facts that if proven would establish a defense to the statute of limitations." Clark v. City of Braidwood, 318 F.3d 764, 768 (7th Cir. 2003). In the present case that question must be answered in the affirmative. Under the discovery rule, the statute of limitations begins to run when the plaintiffs discover or should have discovered that they were injured by defendants' conduct. In re Copper Antitrust Litig., 436 F.3d 782, 789 (7th Cir. 2006). Plaintiffs allege that they did not learn of their anti-trust injuries until late 2008 because defendants actively concealed their anti-competitive behavior and falsely blamed the increase in prices on increased steel costs. Defendants respond that reasonably diligent plaintiffs would have discovered the alleged injuries much sooner, and they also dispute that they misrepresented the cause of price increases. At most, however, defendants create a question of fact as to when plaintiff discovered or should have discovered the injury. Thus, at this stage of the case, I will not dismiss based on the statute of limitations.

**C.     Summary Judgment**

Defendant TYGP moves for summary judgment, stating that it could not possibly have participated in the unlawful behavior plaintiffs allege because it does not manufacture sheet metal AM Parts. The motion is premature because plaintiffs have not yet engaged in discovery. See Fed. R. Civ. P. 56(f). Therefore, I will deny the motion without prejudice.

### III. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motions to dismiss for failure to state a claim and for judgment on the pleadings are **DENIED**.

**IT IS FURTHER ORDERED** that TYGP's motion for summary judgment is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to file a supplemental brief is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion to stay discovery is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 30th day of November 2010.

/s_____
LYNN ADELMAN
District Judge