# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**FOND DU LAC BUMPER EXCHANGE, INC.,** on behalf of itself and others similar situated,
        Plaintiffs,

v.

**JUI LI ENTERPRISE COMPANY, LTD., et al.,**
        Defendants.

Case No. 09C0852

---

**VEHIMAX INTERNATIONAL, LLC,** on behalf of itself and others similarly situated,
        Plaintiffs,

v.

**JUI LI ENTERPRISE COMPANY, LTD., et al.,**
        Defendants.

Case No. 10C0224

---

**ARKANSAS TRANSIT , ARKANSAS TRANSIT HOMES, INC., OLIVIA LEE, PATRICK TORREY, MARY FOWLER, et al.,**
        Plaintiffs,

v.

**JUI LI ENTERPRISE COMPANY LTD., et al.,**
        Defendants

Case No. 11C0162

---

## DECISION AND ORDER

Plaintiffs, Fond du Lac Bumper Exchange, Inc. and Vehimax International, LLC, American purchasers of sheet metal aftermarket auto parts ("AM Parts"), bring these, now consolidated, putative class actions alleging that defendants, Taiwanese manufacturers of such parts and their American subsidiaries, violated Section 1 of the Sherman Anti-Trust

Act by conspiring to fix the prices of many AM Parts sold in the United States and to engage in other anti-competitive conduct such as reducing the availability of AM Parts and sharing the tools used to produce such parts. Plaintiffs further allege that they were injured as a result of defendants' conspiracy by being forced to pay higher prices for AM Parts and having diminished choice in the market. Pursuant to Fed. R. Civ. P. 12(b)(1), defendants' moved to dismiss for lack of subject matter jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. I denied both motions. Before me now are defendants motions to reconsider my decision on the Rule 12(b)(1) motion. Alternatively, defendants ask me to certify both the Rule 12(b)(1) and 12(b)(6) issues for interlocutory appeal.

Courts have the inherent power to revisit prior decisions. In re Text Messaging Antitrust Litig., 630 F.3d 622, 627 (7th Cir. 2010); see also Fed. R. Civ. P. 54(b) (stating that courts may revise interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). Because a motion for reconsideration serves the limited purpose of correcting manifest errors of law or fact or of presenting newly discovered evidence, Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987), movants generally face an uphill battle.

The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Defendants argue that, based on the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C.A. § 6(a), I lack jurisdiction under the Sherman Act. The FTAIA removes from the jurisdiction of the Sherman Act the following conduct:

> conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless –
> (1) such conduct has a direct, substantial, and reasonably forseeable effect –
> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
> (2) such effect gives rise to a claim under the provisions of this Act, other than this section.

15 U.S.C. § 6a. Defendants assert that their alleged anti-competitive conduct took place in Taiwan because they sold the parts in question to plaintiffs in Taiwan. Thus, they contend that their conduct involved purely foreign commerce, not import or domestic commerce and therefore is not within the Sherman Act. Defendants also contend that their conduct did not have the necessary effect on domestic commerce to fall within the Sherman Act and that any effect it may have had did not give rise to plaintiffs' claim.

In order to resolve defendants' motions, I must first consider whether defendants' alleged activities involved import trade or commerce within the FTAIA. Import trade or commerce consists of transactions in which the seller is located abroad, the buyer is domestic, and the goods flow into the United States. Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law, An Analysis of Antitrust Principles and Their Application, Vol. 1B, 3rd ed. § 272i, at 290 (2006). In determining whether defendants' conduct involved import trade or commerce, I focus on the nature of the transactions in which they allegedly engaged, not on their nationalities. Id. I note also that Congress enacted the FTAIA because, as the scope of antitrust liability expanded under the broad jurisdictional language of the Sherman Act, it became concerned that the Sherman Act was excessively

3

hospitable to suits alleging foreign injuries rather than injuries to American consumers. Id. at 287. Another Congressional concern was that antitrust law could impair the ability of American businesses to export their products efficiently as, for example, through joint ventures. Id. Thus, the FTAIA affirms that the purpose of the Sherman Act is to protect consumers and businesses in the American marketplace from injuries arising from anti-competitive activity.

In my previous decision, I found that the transactions in which defendants allegedly engaged involved import commerce and, having reviewed the parties' recent submissions, I conclude that that conclusion was correct. The evidence strongly supports the conclusion that the activities that defendants engaged in were not the type of activities that Congress intended to exclude from Sherman Act jurisdiction. The evidence suggests that defendants' alleged conspiracy focused on setting the prices of parts that were manufactured for the purpose of being sold in the United States and that such parts were in fact sold in the United States at prices established by the anti-competitive agreement. The complaint and the evidence indicate that there is a large American market for the parts in question (far larger than any market that might exist in Taiwan). The complaint and the evidence further indicate that defendants negotiated the sales of parts to importers at prices and in amounts established by the conspiracy and delivered the parts to their ships for transport to the United States. In addition, defendants traveled to the United States to market the parts and established affiliates in the United States to import, distribute and service them. Further, at least one defendant, an American affiliate, itself brought AM parts into the United States.

The foregoing conduct clearly involves import commerce. Defendants' contention that because they may have sold the parts in Taiwan they were not involved in import commerce is based on an unduly narrow understanding of import commerce. Even if defendants transferred title to the parts to plaintiffs in Taiwan and did not themselves ship the parts into the United States, by allegedly agreeing to fix the prices of parts to be sold in the United States and taking the additional steps described above, defendants' conduct involved import commerce. As discussed, the purpose of American antitrust law is to protect the American marketplace from anti-competitive injury, and the FTAIA reaffirms that purpose. The FTAIA does not immunize foreign export cartels such as that allegedly established by defendants from liability for anti-competitive activity in the American marketplace. Defendants' proposed narrow reading of import commerce would have the perverse effect of encouraging companies to engage in off-shore anti-competitive activity designed to harm American consumers and importers.

A number of cases as well as the legislative history of the FTAIA make this point. See, e.g., Continental Ore v. United States, 370 U.S. 690, 704-05 (1962) (stating that "a conspiracy to monopolize or restrain the domestic or foreign commerce of the United States is not outside the reach of the Sherman Act just because part of the conduct complained of occurs in foreign countries"); see also McBee v. Delica Co., 417 F.3d 107, 119 (1st Cir. 2005) (stating that "absent a certain degree of extraterritorial enforcement, violators will either take advantage of international coordination problems or hide in countries without efficacious antitrust or trademark laws, thereby avoiding legal authority"); Pub. Law 97-290, Export Trading Company Act of 1982, H.R. Rep. 97-686, as reprinted in 1982 U.S.C.C.A.N. 2487, 2494-95 (stating that "it is important that there be no

5

misunderstanding that import restraints which can be damaging to American consumers remain covered by the law" and noting that foreign antitrust law applies to the activities of American exporters); Restatement (Third) of the Foreign Relations Law of the United States, Part IV § 415 cmt. b (1987) (stating that the FTAIA provides that activities carried out abroad such as "limiting imports or fixing the price of imported products" are subject to the Sherman Act).

Thus, because defendants' activities involved import trade or commerce, the FTAIA does not bar jurisdiction under the Sherman Act. Even assuming, arguendo, that the FTAIA does apply, the domestic effects exception in the statute would also apply and would bring defendants' activities within the Sherman Act. The evidence indicates that defendants control 95% of the American AM parts market and that by using their combined market power to raise prices and limit the range of products imported into the United States, their alleged conduct had a direct, substantial and foreseeable effect upon import and domestic commerce. See, e.g., Riverdell Forest Products, Ltd. v. Canadian Forest Products, Ltd., 810 F. Supp. 1116 (D. Colo. 1993) (finding direct effect on import commerce where foreign price fixing conspiracy targeted American importers); see also In re Static Random Access Memory (SRAM) Antitrust Litig., No. 07-md-01819, 2010 U.S. Dist. LEXIS 141968 (N.D. Cal. Dec. 31, 2010) (stating that where defendants' price fixing conspiracy targeted American commerce, defendants' conduct had a direct, substantial and foreseeable effect on domestic commerce). In short, defendants' activities "were intended to affect imports and did affect them." United States v. Aluminum Co. of America, 148 F.2d 416, 443-44 (2d Cir. 1945).

Finally, the evidence indicates that plaintiffs' alleged injuries arose directly from the effect of defendants' alleged anti-competitive conduct. After all, fixing the prices that American buyers like plaintiffs had to pay for AM parts was the whole point of the alleged conspiracy.

As an alternative form of relief, pursuant to 28 U.S.C. § 1292(b), defendants request that I certify for interlocutory appeal the issues of subject matter jurisdiction and the sufficiency of the complaint. I may certify a question for interlocutory appeal under § 1292(b) if it presents "a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an intermediate appeal . . . may materially advance" the progress of the case. For a court to grant a § 1292(b) petition, "there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 675 (7th Cir.2000). The party seeking interlocutory review has the burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Fisons Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir.1972).

I decline to certify for intermediate appeal either of the issues defendants raise. The subject matter jurisdiction issue presents a controlling question of law because a determination of no subject matter jurisdiction would end the case. However, if the facts are as plaintiffs allege, defendants' activities clearly involved import commerce and/or had a direct, substantial and foreseeable effect on American consumers and as a result the issue is only marginally contestable. Moreover, an interlocutory appeal is unlikely to speed up resolution of the issue. This is so not only because an appeal would take considerable

7

time but also because I can revisit the issue if discovery indicates that defendants' activities were less oriented toward the American market than it appears.

The question of whether plaintiffs' amended complaint states a claim likely presents a controlling question of law. See In re Text Messaging, 630 F.3d at 626. However, the question is not contestable. This is so because in In re Text Messaging, the Seventh Circuit considered the pleading standard and stated that direct evidence of an agreement to raise prices would be a "smoking gun" sufficient to state a plausible antitrust claim. Id. at 628-29. In the present case, plaintiffs' complaint identifies an admission that defendants no longer compete on price and have achieved very high profit margins by working together to jointly develop the American market. Thus, the question of whether plaintiffs' complaint satisfies the pleading standard involves the routine application of a settled legal standard to facts alleged in a complaint and does not present the type of exceptional circumstance justifying an interlocutory appeal. See id. at 626-27.

Therefore, for the reasons stated, defendants' motions for reconsideration or in the alternative for a certificate of an interlocutory appeal are **DENIED**.

Dated at Milwaukee, Wisconsin this 6th day of July 2011.

/s_____
LYNN ADELMAN
District Judge