# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Fond Du Lac Bumper Exchange, Inc., and Roberts Wholesale Body Parts, Inc. on Behalf of Themselves and Others  Similarly Situated, | Case No. 2:09-cv-00852-LA |
| Plaintiffs, | |
| v. | Consolidated with: |
| Jui Li Enterprise Company, Ltd., et al., | |
| Defendants. | |

| | |
|---|---|
| Arkansas Transit Homes, Inc., Olivia Lee, Patrick Torrey, Mary Louise Fowler, et al., | |
| Plaintiffs, | Case No. 2:11-cv-00162-LA |
| v. | |
| Jui Li Enterprise Company Ltd., et al., | |
| Defendants. | |

| | |
|---|---|
| Dzidra Fuller, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 2:13-cv-00946-LA |
| v. | |
| Jui Li Enterprise Company, Ltd., et al., | |
| Defendants. | |

Fireman's Fund Insurance Company, on
behalf of itself and all others similarly situated,

Plaintiff,

v.

Jui Li Enterprise Company, Ltd., et al.,

Defendants.

Case No. 2:13-cv-00987-LA

**PLAINTIFFS AND DEFENDANTS' JOINT STATUS CONFERENCE STATEMENT**

**JUNE 2014**

In advance of the Court's Status Conference on June 30, 2014, Indirect Purchaser Plaintiffs Arkansas Transit Homes, Inc. ("Arkansas Transit"), Mary Fowler, Olivia Lee, Fireman's Fund Insurance Co., and Dzidra Fuller ("IPPs"), Direct Purchaser Plaintiffs Fond du Lac Bumper Exchange and Roberts Wholesale Body Parts, Inc. ("DPPs"), and Defendants Auto Parts Industrial, Ltd. ("API"), Cornerstone Auto Parts, LLC ("Cornerstone"), Gordon Auto Body Parts Co., Ltd. ("Gordon"), Jui Li Enterprise Co., Ltd. ("Jui Li"), Taiwan Kai Yih Industrial Co., Ltd. ("TKY"), and TYG Products, L.P. ("TYG") (together, "Defendants") hereby submit the following Joint Status Conference Statement.

## PLAINTIFFS' STATEMENT:

## I. DEPOSITIONS OF DEFENDANTS' PERCIPIENT WITNESSES.

### Defendants' Gamesmanship Delaying Discovery is Prejudicing Plaintiffs

DPPs and IPPs (collectively "Plaintiffs") believe the Court should be aware that Defendants' foot-dragging in document production, scheduling depositions, and endless meet-and-confer efforts on mundane items have cumulative prejudicial effects that are now coming to light. Specifically, numerous witnesses Plaintiffs sought to depose have left Defendants'

1

employment after this case was filed and may now be unreachable for interview or deposition. The reason they are unreachable is because Defendants refuse to ask these individuals if they will cooperate for a deposition and Defendants refuse to provide Plaintiffs with any forwarding information such as home addresses or forwarding employer that would permit Plaintiffs to contact them.

This case was filed in 2009. Plaintiffs pleaded a transnational cartel case that spans back at least eleven years. Plaintiffs served their first document requests on Defendants on April 12, 2010. As the Court is aware, the Defendants have been slow to produce documents in response, blaming delays on the fact that their Chinese-speaking clients have responsive documents written in Chinese, they employed incompetent ESI vendors, and prior counsel made mistakes, among other reasons. These delays required Plaintiffs to move to compel production multiple times.

Defendants now assert that their document productions to Plaintiffs are nearly complete, save a portion of documents to be produced by June 30 and July 17. Of course, Plaintiffs cannot fairly conduct depositions for several key witnesses until after they review Defendants' documents. Due to this lengthy delay in production, Plaintiffs' ability to prove their claims is greatly hampered. Specifically, Plaintiffs only just learned that certain of Defendants' employees with central roles in formalizing their myriad collusive agreements to fix prices have left the Defendants' employment. Plaintiffs only learned this fact after Defendants responded to Plaintiffs' list of witnesses sought for deposition. Notably, seven individuals indicated by Defendants in their Rule 26 disclosures as having discoverable information upon which they may rely are no longer employees of Defendants— four from API, and one each from Gordon, Jui Li and TKY. With key individuals leaving the employment of Defendants, Plaintiffs will be hard-pressed to get many of them to testify in this case as most are Taiwan nationals resident in

Taiwan and are therefore outside the jurisdiction of the Court. Had discovery moved along more quickly during the life of this case, this problem could have been avoided.

Johnson Che, a former high-level executive of both API and Jui Li, is a prime example of a key witness who is now likely unavailable because of Defendants' delay. Mr. Che was the chairman of API until August 2006. As chairman, Mr. Che signed dozens if not hundreds of joint agreements with API's competitors. In 2007, Mr. Che became the Executive Vice President of co-Defendant Jui Li and purchased 40% of the stock of Jui Li. Now, less than a week after Jui Li produced a massive amount of responsive documents, Defendants informed Plaintiffs only on June 18 that Mr. Che had resigned from Jui Li effective January 1, 2014, even though he had an agreement to work with Jui Li through June 2014. Plaintiffs could not have noticed Mr. Che's deposition earlier because Defendants had not produced documents that would be necessary to conduct a complete deposition. Indeed, Jui Li admits to the Court in this case management statement that it has only recently produced approximately 73,000 pages of documents, it intends to produce 10,000 more documents by June 30, and it recently discovered approximately 50,000 pages of responsive hard copy documents that it must review and produce. It stands to reason that documents relating to or mentioning Mr. Che will be located in these forthcoming Jui Li productions. Simply put, Defendants' delay made Mr. Che unavailable. It should be noted that DPPs and IPPs have learned on their own initiative that Mr. Che left API under suspicious circumstances and was investigated by Taiwanese authorities for suspected embezzlement of funds, which makes his departure before Plaintiffs could depose him all the all the more suspect.

Plaintiffs have requested that Defendants provide select contact and employment-related information for a refined list of identified former employees so that, should Plaintiffs have the

need to pursue the onerous process of obtaining these individuals' testimony in Taiwan, they could be located. While Defendants have agreed to provide DPPs and IPPs with the individuals' dates of employment and are amenable to disclosing if the individual is soon to leave their employer, they refuse to provide other contact and employment-related information for two reasons.

The first reason Defendants assert for refusing to produce this contact information is the frankly baseless position that the information is not discoverable. It is unquestionably likely to lead to the discovery of relevant evidence. The second reason is based upon Defendants' interpretation of certain provisions of a Taiwanese law pertaining to information privacy that was enacted only three years after this litigation began. Though the Defendants stand on their interpretation of this foreign law as a basis to avoid producing the benign contact information Plaintiffs seek, no counsel of record in this case has yet identified themselves as an attorney admitted to practice in Taiwan and therefore qualified to advise on the application of this privacy law in this context. Indeed, in the meet-and-confer process regarding the employee information sought by Plaintiffs, Defendants advised Plaintiffs to "google" the Taiwanese law in question to determine its application here. Simply put, Defendants are speaking out of school on this topic. Further, though Defendants claim to not take their obligations under this Taiwanese law lightly, they should be aware that certain of the documents they have produced thus far contain personal information about employees that, by their own representations in this case management statement regarding the protections of this Taiwanese privacy law, is protected from disclosure. It is fair to say that Defendants have an inconsistent approach to this issue and are merely using the Taiwan law as another roadblock to Plaintiffs' discovery requests.

4

Despite the forgoing, the parties currently are meeting and conferring on the issues set forth above and hope to resolve the matter before the case management conference.

**Percipient and 30(b)(6) Witness Depositions of Defendants**

To ensure timely completion of discovery, DPPs and IPPs intend to notice more percipient witness depositions of Defendants in advance the June 30 case management conference. Specifically, DPPs and IPPs seek to depose the following individuals:

| **API** | **Jui Li** | **Gordon** | **TKY** |
|---|---|---|---|
| Sheila Tung (no Chinese name given) | YiPei Li (李易培) | Richard Wang (王瑞) | Simon Chen (陳祖雄) |
| ZhaoLong Chen (陳招龍) | Joseph Guan (管茂丞) | Jones Lin (林仲廉) | Angus Tai (戴安國) |

Formal deposition notices will follow shortly. Defendants' June 18 letter to DPPs and IPPs proposes a number of dates in mid-to-late September and early October – between 2½ to 3 months from now – on which both 30(b)(6) and percipient witnesses are available for all Defendants. Given Defendants' outstanding and incomplete document productions (all of which they claim will be complete by July 17), the length of time it will take Plaintiffs to review, translate and distill these documents into materials ready for depositions, Plaintiffs will not be forced by Defendants into taking depositions before they are prepared to do so. That being said, DPPs and IPPs are reviewing these dates and will meet and confer with Defendants to determine which of these dates, if any, will be mutually agreeable to the parties.

In May, Plaintiffs noticed three API individual depositions for June. These depositions were addressed at the last status conference. After the Court ordered API to produce the three

individual witnesses for deposition no later than August, 2014, API offered those witnesses, Henry Lin, Jack Hsieh, and K.D. Cheng, for the last three weekdays of August (August 26, 27 and 28, 2014).   When asked for 30(b)(6) deposition dates in August, Plaintiffs were told it was impossible.  Plaintiffs then offered to take the 30(b)(6) depositions by teleconference if earlier dates could be provided.  Again, Plaintiffs were told it was impossible.  API has offered the DPPs and IPPs September 26 for the deposition of its 30(b)(6) witness or witnesses.  Plaintiffs will continue to meet and confer with Defendants to coordinate deposition dates but may require the Court's assistance again to obtain reasonable dates.

## II.    STIPULATION REGARDING NUMBER AND DURATION OF DEPOSITIONS.

Despite meeting and conferring on the matter for months now, the parties are at an impasse regarding the number of depositions DPPs and IPPs should be permitted to take, as well as the duration of any percipient or 30(b)(6) witness depositions.

### Number of Depositions

The parties agree that the Civil Rules in this case permit up to 30 depositions.  The parties have agreed to wait until the number of depositions permitted under the Federal Rules is reached before deciding whether to seek permission to take additional depositions. Given the transnational and lengthy temporal scope of both the DPPs' and IPPs claims, the number of potential witnesses identified by Defendants through their Rule 26 disclosures and custodian lists totals well over 100 individuals.  Despite their own identification of over 100 potential witnesses alone, Defendants disingenuously assert that 30 depositions, inclusive of all 30(b)(6), third-party and authentication depositions should be sufficient.

Not only is this number necessarily too low for a case of this size, but this number neglects to consider the depositions necessary and unique to the IPPs' requirement to prove that Defendants' overcharge was passed on to them.  In particular – and unlike the DPPs – IPPs must

6

prove that Defendants' overcharges moved through the aftermarket sheet metal distribution chain, meaning from the direct purchasers through the body shops to end-payors, whether third-party payors or individuals. (And this analysis, by the way, does not undo DPPs' damages that arise under the Clayton Act, which damages coexist alongside IPPs' damages that arise under various state antitrust and consumer-fraud laws.) Thus, when considering IPPs' burden of proof – not to mention the number of state-law jurisdictions involved – it is likely that the pass-on effort *itself* could require 30 depositions.

Given the foregoing – and including the fact that IPPs must subpoena all these third-parties for deposition, which effort requires serving and negotiating multiple subpoenas, sometimes on less than cooperative deponents that, as Defendants observe, Defendants do not control – it becomes evident that IPPs, despite their best efforts and intentions, cannot "take depositions starting next month." For example, despite having subpoenaed a number of direct purchasers last Fall, IPPs are *still* negotiating for documents that IPPs must review before deposing these direct purchasers. As for body shops, a number of them are being difficult, but the IPPs press on and pledge to compile the most robust data set possible to demonstrate that Defendants' price-fixing scheme ultimately victimized them. So for all these reasons, IPPs need the time necessary to take the best and most effective depositions to prove their case.

Accordingly, Plaintiffs are amenable to moving forward with 30 depositions for the time being but will in all likelihood seek leave of Court to take further depositions. Plaintiffs can assure the Court that they find no value in taking duplicative and unnecessary depositions. That being said, Plaintiffs require the flexibility to pursue the testimony needed to prove their case. It is a near certainty that, should this case go to trial, practically none of the individuals Plaintiffs depose will appear to provide live testimony. Accordingly, depositions are Plaintiffs' only

7

chance to get many of the targeted individuals on the record in this case.

**Duration of Depositions**

Defendants are Taiwanese companies and English is not the native language for most of the percipient and 30(b)(6) witnesses that the DPPs and IPPs seek to depose. Accordingly, most depositions in this case will need to be taken through Chinese language interpreters. Because translation impedes the flow of a deposition, courts in cases similar to this one have granted substantial extensions to the Federal Rules' 7 hour limit on depositions when translations are required. As noted by Plaintiffs in the May 2014 case management conference statement, Rule 30 explicitly provides for the Court to make this accommodation. *See* Fed. R. Civ. P. 30(d)(1) ("The court must allow additional time . . . if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."). The prevailing antitrust case law provides for twice the allotted time under the Rule for translated depositions.

In *In Re Optical Disk Drive Products Antitrust Litigation* (3:10-md-2143 RS (JCS), N.D. Cal.) the Court provided that when an interpreter is used for all or nearly all of a deposition,

> *the time limits set forth in Fed. R. Civ. P. 30(d)(1) or as modified by this Order shall be doubled. In all other situations, the Parties shall cooperate in good faith to extend the time limit set forth in Fed. R. Civ. P. 30(d)(1) to account for the use of an interpreter, guided by the principle that deposition time during which an interpreter is used should be counted at 50% or one half the actual amounts against the time limit.*

*See* Ex. A. Similarly, Judge Illston implemented such an order in the *Flat Panel* litigation, doubling the time for deposing non-English speaking witnesses is doubled from 12 hours to 24 hours. *See* Ex. B.

Accordingly, DPPs and IPPs respectfully request that the Court set a 14 hour limit for deposition testimony where the majority of the witness' testimony must be translated from Chinese into English. DPPs and IPPs intend to take these depositions as expeditiously and efficiently as possible, with an aim to complete any such depositions well before the 14 hours are up.

For deponents whose depositions are taken in English without the assistance of a translator, DPPs and IPPs agree that a 7 hour limit in accordance with the Federal Rules is sufficient. Should, however, a translator be needed for part of a deposition, DPPs and IPPs suggest that any translated testimony should be counted as 50% of the allotted time. For example, if an hour's worth of testimony is contemporaneously translated, that hour would count as a half hour for purposes of calculating the 7 hour time limit.

Defendants' proposal of an 11 hour time limit to translated depositions was an eleventh-hour proposal suggested after they held firm for weeks that depositions should not last longer than the Federal Rules allow, regardless of translations. Defendants clearly seek nothing more than to impede Plaintiffs from getting the testimony necessary to prove their case; indeed, they offer no good reason why, in this broad case, sufficient allowance for the difficulties of translation should not be afforded. As Plaintiffs have often noted, theirs is not an easy case to prove. The cartel alleged spans continents and it originated at least eleven years ago in a business climate significantly different, both linguistically and culturally, from the United States. For deponents involved in the cartel, and the planning and execution of its agreements, 14 hours should be sufficient time for Plaintiffs to extract the testimony required.

DPPs and IPPs request the Court's guidance and resolution of these deposition-related disputes at the upcoming case management conference.

9

## III. DOCUMENT PRODUCTIONS BY TKY, TYGP, JUI LI AND GORDON.

### Defendants' Request for Additional Time to Complete Productions

Defendants request that the Court allow TKY and Jui Li additional time beyond the June 30, 2014 production deadline to produce documents responsive to Plaintiffs' first set of document requests. These productions should have been completed years ago. Late last year, Defendants TKY and Jui Li requested yet another extension to their production deadline and claimed, after years of litigation, that their search methodology was overbroad and needed to be completely redone. These Defendants also informed Plaintiffs and the Court that their document custodians needed to be completely reassessed. TKY and Jui Li's law firm, Latham & Watkins, then spent several months reevaluating, identifying, and withdrawing document custodians. Contrary to Defendants' suggestion, the fact that Plaintiffs assisted Defendants in refining their keyword search methodology (ultimately narrowing Defendants' overbroad searches) and identifying document custodians that Defendants should have identified independently is not the cause for the delayed production of these documents.

Nonetheless, Plaintiffs will not object, to Defendants taking an additional two weeks until July 17, 2014 to produce the remaining TKY and Jui Li documents.

### Defendants Have Yet to Produce All Transactional Data

Defendants recently informed Plaintiffs that they have located potentially responsive Jui Li transactional data in paper form which may result in the production of "approximately 50,000 pages" of additional transactional data. Just this week Defendants produced previously unidentified TKY/TYI sales data. Further, Defendants wrote to Plaintiffs indicating that they will be producing additional TYGP credit data. As the Court is also aware, just this year, TKY and Jui Li made replacement productions of the transactional data that the Court ordered them to produce in July 2011. Defendants continue to produce and then reproduce their transactional

10

data, including data that the Court ordered them to produce years ago. Further, following extensive review and work by Plaintiffs' experts, Plaintiffs have identified issues regarding the completeness of Defendants' transactional data productions, necessitating the Rule 30(b)(6) depositions on data topics that the Court ordered last month. Plaintiffs will continue to apprise the Court on these issues related to Defendants' transactional data and may seek the Court's assistance if necessary.

## IV.    RESPONSES TO DEFENDANTS' DISCOVERY.

DPPs produced documents on April 25, 2014 and May 2, 2014. DPPs have reiterated their objections to certain Requests for Production, and have exchanged correspondence with Defendants regarding those Requests. DPPs will continue to meet and confer about those Requests as necessary.

<u>**DEFENDANTS' STATEMENT:**</u>

## I.    DOCUMENT  PRODUCTION, CUSTODIANS  AND CATEGORIES OF DOCUMENTS  BY DEFENDANTS.

Since the Court's May 2014 Status Conference:  (1) Defendant TKY produced approximately 40,000 documents, amounting to over 87,000 pages; and (2) Defendant Jui Li produced approximately 35,000 documents, amounting to about 73,000 pages. Defendants TKY and Jui Li anticipate making one more production each by the end of June 2014. Defendant TKY anticipates producing over 60,000 more documents, and Defendant Jui Li anticipates producing over 10,000 more documents. With this anticipated production, Defendants TKY and Jui Li will have completed the review and production of all of the dataset identified in Defendants' December 2013 Motion for an Extension.

As this Court is aware, Defendants TKY and Jui Li agreed to review the documents of additional custodians, as well as additional documents "hitting" on Plaintiffs' proposed keywords

Case 2:09-cv-00852-LA   Filed 06/26/14   Page 12 of 25   Document 484

per Plaintiffs' request and following a lengthy meet and confer. The addition of these keywords and custodians increased Defendant TKY's dataset by approximately 42,000 electronically stored documents, and increased Defendant Jui Li's dataset by approximately 20,000 electronically stored documents. Defendants TKY and Jui Li require a very brief amount of additional time to review just a small subset of these additional documents which have not yet been reviewed. As of today, Defendant TKY has approximately 30,000 more electronically stored documents to review, and Defendant Jui Li has approximately 10,000 more electronically stored documents to review. Accordingly, Defendants TKY and Jui Li anticipate that they should be able to complete the review of these additional documents by July 17, 2014, and seek such leave from the Court to do so.

In addition to the foregoing, Defendant Jui Li has identified potentially responsive data in paper format that has not been previously produced in electronic format. Defendant Jui Li is in the process of ascertaining the quantity of this data, but anticipates that it should be no more than approximately 50,000 pages. Jui Li counsel shall meet and confer with Plaintiffs' counsel with respect to the review and production of these additional documents.

As this Court is aware, Defendants API, Cornerstone and TYGP have completed their document production. Moreover, but for a few potential additional categories of documents and a few possible additional custodians that the parties are still discussing, Gordon completed its document production by the Court-ordered deadline of April 30, 2014, and has also produced all relevant privileged and redacted documents logs.

## II.     PLAINTIFFS' RESPONSES TO DEFENDANTS' WRITTEN DISCOVERY.

Defendants are still meeting and conferring with respect to responses and documents provided by DPPs and IPP Arkansas Transit, Olivia Lee and Mary Fowler in response to Defendants' written discovery. These issues are not yet ripe for the Court. In addition, late last

12

month, Defendants received IPP Fuller's responses to Defendants' written discovery. Defendants will be initiating a meet and confer with Ms. Fuller to discuss her responses shortly.

## III.    DEPOSITION CONFIDENTIALITY DE-DESIGNATIONS.

On June 26, 2014, IPPs and Defendants are scheduled to meet and confer regarding the confidentiality designations of the transcripts of depositions taken of Defendants' Rule 30(b)(6) witnesses in Taiwan in February 2012. This issue is not ripe for the June 2014 Court conference.

## IV.    NUMBER OF DEPOSITIONS.

**Defendants' Position:** In 2012, DPPs and IPPs took a total of 7 depositions, which included the following: 30(b)(6) deposition of API, 30(b)(6) deposition of Cornerstone, 30(b)(6) deposition of TYG Products, 30(b)(6) deposition of TKY, 30(b)(6) deposition of Jui Li, 30(b)(6) deposition of Gordon, and third-party deposition of Karen Fierst. DPPs and IPPs took no depositions in 2013.

In May and June, 2014, DPPs and IPPs (through cross-notices) noticed 8 depositions, which include the following: 30(b)(6) deposition of API, 30(b)(6) deposition of TYG Products, 30(b)(6) deposition of TKY, 30(b)(6) deposition of Jui Li, 30(b)(6) deposition of Gordon, and individual depositions for API employees, Henry Lin, Jack Hsieh and KD Cheng. To date, three depositions dates have been confirmed for Messrs. Lin, Hsieh and Cheng (August 26, 27 and 28, respectively).

At this point, DPPs and IPPs have now noticed depositions that, counting the 7 depositions already taken, do not exceed their allotment under the Federal Rules of Civil Procedure. Counting depositions actually taken and depositions currently noticed, DPPs and IPPs have reached a total of 15 depositions. Defendants, therefore, believe that the issue is not ripe for the Court to determine, since leave to take additional depositions should be considered once DPPs and IPPs have exhausted their limit and demonstrated that the depositions they propose to take

13

are neither cumulative nor duplicative, and are necessary given the time and expense.

The foregoing notwithstanding, Defendants are amenable to placing an upper limit on the number of depositions that Plaintiffs can take. To that end, since the last Court conference in May 2014, the parties have met and conferred regarding the number of depositions that may be taken by DPPs and IPPs. While Plaintiffs reduced the number of depositions that they wished to take from the staggering and impractical 100 depositions—which would have required the parties to take nearly three depositions a week between now and the close of oral discovery in April 2015 to complete—to 50 (see Defendants' Exhibit 1), this request is still impractical and not feasible. First, 50 depositions is more than the Federal Rules of Civil Procedure allow. Second, 50 depositions is tantamount to at least 2 depositions a week between now and the end of oral discovery. Third, although Plaintiffs proposed a 50 deposition limit, this "cap" is illusory at best, as under their proposal, Plaintiffs reserved the right to seek more depositions in excess of these 50. For their part, Defendants are willing to consider a reasonable limit on the number of depositions, and have proposed to Plaintiffs a limit of 30 depositions.

Further, Defendants have already indicated to DPPs and IPPs on at least two separate conference calls that once DPPs and IPPs reach their limit, they will consider how many additional depositions DPPs and IPPs might need. It should be noted that IPPs wish to take the depositions of numerous third-parties, none of which Defendants control. Therefore, there is no reason that IPPs cannot notice and take depositions starting next month.

**<u>Defendants' Response to Plaintiffs' Position:</u>** Plaintiffs concede that they are entitled to no more than 30 depositions pursuant to Rule 30(a)(2)(A)(1) of the Federal Rules of Civil Procedure. Plaintiffs will have to seek and obtain leave from this Court for each and every deposition they seek above and over the 30 that they concede they are allowed. One hundred or

more depositions is by all reasonable measures unduly burdensome, oppressive, excessive, cumulative, duplicative and expensive.

## V.     DEPOSITION DATES.

**Defendants' Position:**  Defendants have offered dates for the following depositions to DPPs and IPPs.  Only three deponents are confirmed.

| 8/8/2014 | Available for TYGP witness or Rule 30(b)(6) witness – Dallas, TX |
|---|---|
| 8/11/2014 | Available for TYGP witness or Rule 30(b)(6) witness – Dallas, TX |
| 8/12/2014 | Available for TYGP witness or Rule 30(b)(6) witness – Dallas, TX |
| 8/13/2014 | Available for TYGP witness or Rule 30(b)(6) witness – Dallas, TX |
| 8/14/2014 | Available for TYGP witness or Rule 30(b)(6) witness – Dallas, TX |
| 8/26/2014 | Deposition of Henry Lin (API) – Taiwan – CONFIRMED |
| 8/27/2014 | Deposition of Jack Hsieh (API) – Taiwan – CONFIRMED |
| 8/28/2014 | Deposition of K.D. Cheng (API) – Taiwan – CONFIRMED |
| 9/12/2014, 9/15/2014 & 9/16/2014 | Tentative dates for Rule 30(b)(6) Depositions of Gordon, Jui Li and TKY – Taiwan |
| 9/26/2014 | Available for Rule 30(b)(6) Deposition of API – Taiwan |
| 9/29/2014-10/1/2014 2014 | Available for Sheila Tung and Zhao-Long Chen (API witnesses) – Taiwan |
| 10/3/2014, 10/6/2014 & 10/7/2014 | Tentative dates for Rule 30(b)(6) Depositions of Gordon, Jui Li and TKY – Taiwan |

**Defendants' Response to Plaintiffs' Position Regarding Deposition Dates and Alleged Delays:** First, Plaintiffs accuse Defendants of delaying this case, and further argue that because Defendants  "delayed" in completing their document production, Plaintiffs were unable to take depositions or even identify individuals that they wanted to depose.  Not so.  Defendants API and Cornerstone completed their document productions nearly two years ago.  Plaintiffs thus could have started oral discovery years ago and/or could have, at the very least, identified whom from API and Cornerstone they wanted to depose long ago.  Similarly, Defendants Gordon, TKY

15

and Jui Li have been producing documents to Plaintiffs on a rolling basis since November 2012; Plaintiffs have been in possession of hundreds of thousands of pages of document discovery from these three defendants for many months now. Nothing precluded Plaintiffs from starting to identify names of individuals that they wanted to depose based on the many installments of documents that they have received to date.

Second, Plaintiffs have suggested that Defendants have conspired to delay the production of documents in order to facilitate the termination of material witnesses. The facts do not support Plaintiffs' conspiracy theory. Plaintiffs initially advised Defendants (and have in their statement above) that they wanted to take 100 depositions. In an effort to meaningfully meet and confer and identify those individuals whom Defendants control, it was Defendants who in fact initiated and asked Plaintiffs to provide them with a list of individuals that Plaintiffs wanted to depose. Had Defendants had any nefarious intent as is accused by Plaintiffs' counsel, Defendants would have never voluntarily offered to engage in this exercise intended to work with Plaintiffs to efficiently and cost-effectively identify the potential witnesses that Plaintiffs wanted to depose. In late May and in early June, Plaintiffs sent Defendants such a list with over 125 names

On June 18, 2014, Defendants notified Plaintiffs which deponents were no longer employees of each defendant and the dates of termination for each employee. See Defendants' Exhibit 2. Of the 125 deponents that Plaintiffs propose to take, 37 deponents are former employees (33) or were never employees of Defendants in the first place (4). Of the 33 former employees, 12 terminated their employment before this case was filed in 2009. Further, only 2 of the 37 deponents that Plaintiffs wish to depose terminated their employment in 2014. People start new jobs and leave old jobs every day, and Plaintiffs' suggestions that Defendants engaged in any wrongdoing is both unfounded and an inappropriate and improper attack on Defendants.

16

## V.  IDENTIFICATION OF POTENTIAL WITNESSES IS PROHIBITED BY TAIWAN'S PERSONAL INFORMATION PROTECTION ACT OF 2010.

**Defendants' Position:**  As set forth herein, in an effort to meaningfully meet and confer regarding the number of depositions the parties should be allowed to take, Defendants voluntarily requested that Plaintiffs provide them with a list of all potential deponents so that Defendants could help identify individuals who no longer work for the companies (and for whom a subpoena would be required), and others who are unlikely to be sources of relevant testimony.  Defendants quickly reviewed these lists and voluntarily identified both current and former employees.  For both current and former employees, Gordon, TKY and Jui Li voluntarily identified their titles/positions.  For former employees, Gordon, TKY and Jui Li also voluntarily identified their employment dates.  For former employees, API voluntarily identified the termination of employment dates.

Now, Plaintiffs are mandating that Defendants identify the following information about these former employees: (a) the reason for each person's termination; (b) the last known home address; (c) the current employer and work address and/or last known forwarding work address; (d) whether a former employee has worked as a consultant, independent contractor or other non-employee capacity since termination; and (e) whether each respective Defendant pays, directly or indirectly, consulting fees, pensions, annuities or any other remuneration to each person, and how each Defendant, conveys these payments.  As an initial matter, DPPs are effectively asking interrogatories again on an informal basis.  Defendants object to the manner in which DPPs are trying to evade the formal discovery processes.

More fundamentally, even if properly propounded, Defendants would be required to object under the Taiwan Personal Information Protection Act of 2010 ("Protection Act"), which prohibits the disclosure of personal information of Taiwan citizens by either government or

private entities. Specifically, Articles 2 and 16 of the Protection Act prohibits the disclosure of almost all individual personal information without permission. This personal information includes a person's name, date of birth, I.D. card number, passport number, physical characteristics, fingerprints, marital status, family, education, occupation, medical report, medical treatment, genetic information, sexual life, health examination, criminal record, contact information, financial conditions, social activities and other information which may be used to identify a natural person both directly and indirectly. Defendants are specifically prohibited by the Protection Act from disclosing the personally identifying information sought by subcategories (a)-(e) above.

DPPs also are requesting detailed information about the medical condition and diagnosis of an API current employee who has been on medical leave since May 27, 2014, and details surrounding whether she would be amenable to appear for a deposition while on medical leave. API objects to providing any additional information regarding Ms. Hsu. This information not only cannot be disclosed under the Protection Act, but there would also be serious privacy concerns in disclosing the nature of her diagnosis and medical condition were she a United States resident. Furthermore, API has no ability to produce a witness for a deposition while on medical leave without that witness' consent, which is not being provided.

Defendants do not take their obligations under the Protection Act lightly. The penalties for disclosure of personal identifying information such as an address and/or occupation or health status, include potentially significant civil and possible criminal penalties ranging from 50,000 to 500,000 New Taiwan Dollars, confiscation, deletion or destruction of personal data files, consequential damages to each plaintiff wronged, and the possibility of up to 2 years imprisonment.

Case 2:09-cv-00852-LA   Filed 06/26/14   Page 19 of 25   Document 484

Moreover, DPPs have argued that the Protective Order in this case suffices to protect these individuals' private and sensitive data, but they have not advanced any reason or authority that the Protective Order trumps Taiwanese domestic law.

**Defendants' Response to Plaintiffs' Statement Regarding Protected Information:** Plaintiffs do not cite to any legal authority that the personal information of former employees is discoverable in the instant matter, or that Defendants have any obligation to volunteer such information. To the contrary, Defendants do not have any duty to provide Plaintiffs with information about private individuals whom they no longer control. Moreover, federal courts look unfavorably upon "unhindered" disclosure and discovery of private information or personnel files of third parties/former employees. *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 447 (D. Minn. 1997). Indeed, in *Raddatz*, 177 F.R.D. at 447, the court cited another court's unpublished decision for the proposition that:

> The subjects of such files are often non-parties to the litigation. Such files commonly contain addresses, phone numbers, income information, medical histories, employment discipline, criminal records, and other sensitive, personal information having little or no relevancy to the issues in litigation. To permit wide dissemination of personal files would result in a clearly defined, serious, and unnecessary injury to the privacy of the employee who is not a party to the lawsuit. Revelation of such information could cause economic or emotional harm. The files could contain embarrassing material. They commonly contain confidential material.

*See also Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass. 1995) ("[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer").

The Protective Order in this case does not alter the conclusion that confidential information of a third party/former employee is not widely or generally discoverable. The

19

*Raddatz* court opined that "the very act of disclosing an employee's sensitive and personal data is a highly, and frequently, an unnecessarily intrusive act—whether or not that disclosure is governed by the terms of a Confidentiality Order." *Id.*

Moreover, Defendants have repeatedly stated that they are prohibited by the laws of Taiwan from disclosing the requested information. Further, the Protection Act, which was enacted in 2010, does indeed cover the requests for the sensitive and detailed personal information requested by Plaintiffs in 2014.

## VII. LENGTH OF DEPOSITIONS.

**Defendants' Position:** The parties have met and conferred regarding the extent to which a deposition involving the use of an interpreter should exceed the Federal Rules of Civil Procedure time limit of 7 hours. Plaintiffs have proposed a blanket 14 hour limit for all non-English language depositions. Defendants do not believe that if a deposition involves an interpreter, that DPPs and IPPs should be afforded up to 14 hours, which essentially means that every witness—regardless of their job duties or potential testimony and knowledge of the allegations—could be potentially deposed for two consecutive days.[1] Defendants have proposed a compromise position of anywhere from 9 to 11 hours, neither of which has been accepted by DPPs and IPPs. Based upon the case law, Defendants submit that a witness should not be deposed for more than 10 hours. *See Balu v. Costa Crociere S.P.A.*, 2011 WL 3359681, *2 (S.D. Fla. Aug. 3, 2011) ("The seven-hour rule shall otherwise be in place, unless the witness requires an Italian–English interpreter, in which case the deposition may last up to ten hours."); *Kuang v. Genzyme Genetics Corporation,* 2012 U.S. Dist. LEXIS 172273, *10-11 (S.D.N.Y. Nov. 28,

---

[1] Moreover, as a practical matter, 14 hour depositions means that the parties will have to spend potentially 100 days in depositions between now and the end of oral discovery, most likely in Taiwan as the great majority of the witnesses identified by Plaintiffs are located there. Again, accepting Plaintiffs' proposal would be tantamount to requiring at least three days of depositions to be completed per week between now and the end of the oral discovery cut-off.

20

2012) (the court granted leave for an additional five hours for the deposition of Plaintiff for a total of 10 hours because "the use of a Mandarin interpreter had slowed down the deposition").

In an effort to reach a compromise, Defendants last week offered to produce witnesses requiring an interpreter for up to 11 hours. Plaintiffs are unwilling to compromise at all and intend to seek 14 hours. *See* Defendants' Exhibit 3.

**Defendants' Response to Plaintiffs' Request for Two-Day Depositions For All Witnesses:** Defendants disagree that Plaintiffs are entitled to 14 hours—two days—for all depositions of all witnesses, regardless of the circumstances. Moreover, Plaintiffs' reliance on *In Re Optical Disk Drive Products Antitrust Litigation* and the *Flat Panel* Antitrust Litigation to support its request for 14 hours is misplaced. Neither Order cited by Plaintiffs is precedential, and neither Order resulted in a published opinion in either case.

## VIII. DOCUMENT PRODUCTIONS BY DEFENDANTS TKY AND JUI LI.

**Defendants' Response to Plaintiffs' Position:** Plaintiffs have noted that Defendants TKY and Jui Li have produced over 160,000 pages of documents in the past few weeks. To the extent that Plaintiffs intend to seek an extension of time or to delay oral discovery on account of these productions, Defendants object. Plaintiffs have been on full notice of the volume of documents that these defendants have had to review for many months now, and in fact requested to add more documents to the data set earlier this year. Plaintiffs cannot be heard now to complain about receiving the volume of documents they themselves requested. Moreover, any suggestion of a data dump is disingenuous, as Defendants TKY and Jui Li have produced responsive, non-privileged documents on a rolling basis, with appropriate updates on the volumes of such productions in the monthly status reports to the court, every single month for the past 8 months. This is not the situation where Defendants TKY and Jui Li intentionally waited months

21

to produce documents, only to drop hundreds of thousands of pages on Plaintiffs' doorstep at the eleventh hour. Any such improper suggestion of data dumping by Plaintiffs should be disregarded.

Respectfully submitted by the undersigned counsel:

**ATTORNEYS FOR DIRECT PURCHASER PLAINTIFFS**

s/ *Jason S. Hartley*_____
Jason S. Hartley
STUEVE SIEGEL HANSON, LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400-5832
Email: hartley@stuevesiegel.com

s/ *Vincent J. Esades*_____
Vincent J. Esades
Jessica N. Servais
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com
jservais@heinsmills.com

*Direct Purchaser Plaintiffs' Co-Lead Counsel*

s/ *K. Scott Wagner*_____
K. Scott Wagner (SBN 1004668)
HALE & WAGNER, SC
839 N. Jefferson Street, #400
Milwaukee, WI 53202
Telephone: (414) 278-7000
Facsimile: (414) 278-7590
Email: ksw@halewagner.com

*Direct Purchaser Plaintiffs' Liaison Counsel*

**ATTORNEYS FOR INDIRECT PURCHASER PLAINTIFFS**

s/ *Melissa H. Maxman*_____
Melissa H. Maxman
COZEN O'CONNOR
1627 I Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 912-4800
Facsimile: (202) 640-5520
Email: mmaxman@cozen.com

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: b.barnow@barnowlaw.com

Michael L. Roberts
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474
Email: mikeroberts@robertslawfirm.us

Daniel R. Karon
GOLDMAN SCARLATO & KARON, PC
700 W. St. Clair Avenue, Suite 204
Cleveland, OH 44113-1998
Telephone: (216) 622.1851
Facsimile: (216) 241-8175
Email: karon@gsk-law.com

Derek G. Howard

22

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: (415) 788-9000
Facsimile: (415) 398-3887
Email: dhoward@minamitamaki.com

*Proposed Co-Lead Class Counsel for the
Indirect Purchaser Class*

Shpetim Ademi
ADEMI & O'REILLY, LLP
3620 East Layton Avenue
Cudahy, WI 53110
Telephone: (414) 482-8000
Email: sademi@ademilaw.com
John C. Cabaniss
CABANISS LAW, SC
839 North Jefferson Street
Milwaukee, WI 53202
Telephone: (414) 220-9211
Email: john@cabanisslaw.com

*Proposed Liaison Counsel for the Indirect
Purchaser Class*

**ATTORNEYS FOR DEFENDANTS**

s/ *Yi-Chin Ho*
Yi-Chin Ho
LATHAM & WATKINS
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 891-8988
Facsimile: (213) 891-8858
Email: yichin.ho@lw.com

s/ *Joanna Rosen*
Joanna Rosen
LATHAM & WATKINS
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joanna.rosen@lw.com

23

*Attorneys for Defendants Gordon Auto*
*Body Parts; Tong Yang Industry Co., Ltd.;*
*Taiwan Kai Yih Industrial Co., Ltd.; TYG*
*Products, L.P.; and Jui Li Enterprise Co., Ltd.*

s/ *Gretchen L. Jankowski*
Gretchen L. Jankowski
Cindy Hinkle
BUCHANAN INGERSOLL & ROONEY PC
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041
Email: gretchen.jankowski@bipc.com
cindy.hinkle@bipc.com

*Attorneys for Defendants Auto Parts Industrial,*
*Ltd. and Cornerstone Auto Parts, LLC*

24