UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

FOND DU LAC BUMPER EXCHANGE, INC., on
behalf of itself and others similarly situated,
          Plaintiff,

v.                                                                                  Case No. 09-cv-0852

JUI LI ENTERPRISE COMPANY, LTD., et al.,
          Defendants.
_____

DZIDRA FULLER, et al,
          Plaintiffs,

v.                                                                              Case No. 13-cv-0946

JUI LI ENTERPRISE COMPANY, LTD., et al.,
          Defendants.
_____

FIREMAN'S FUND INSURANCE, CO., on
behalf of itself and others similarly situated,
          Plaintiff,

v.                                                                            Case No. 13-cv-0987

JUI LI ENTERPRISE COMPANY, LTD., et al.,
          Defendants.
_____

NATIONAL TRUCKING FINANCIAL RECLAMATION
SERVICES LLC, on behalf of itself and others
similarly situated,
          Plaintiff,

v.                                                                            Case No. 13-cv-1061

JUI LI ENTERPRISE COMPANY, LTD., et al.,
          Defendants.
_____

## DECISION AND ORDER

Plaintiffs in this consolidated action, which includes both direct and indirect purchasers of aftermarket sheet metal, allege that defendants violated the Sherman Act as well as various state antitrust and unfair competition laws. Before me now is a motion by defendant Jui Li Enterprise Company ("Jui Li"), a Taiwanese manufacturer of aftermarket sheet metal, to recuse myself.

### I. Background

In 2009, direct purchasers of aftermarket sheet metal products ("DPPs") filed a putative class action against defendants alleging violations of the Sherman Act. Subsequently, indirect purchasers ("IPPs") filed putative class actions alleging state antitrust and unfair competition claims, which I consolidated with the DPPs' action. Plaintiffs allege that defendants, most of which are Taiwanese companies, fixed the prices of aftermarket sheet metal products and engaged in other anti-competitive conduct causing the prices of products sold in the United States to increase significantly.

The case is complex and has been intensely litigated. Discovery, much of which has taken place in Taiwan, has been contentious and difficult, involving language barriers and interpreters. To better manage the case, I have held monthly telephonic status conferences with counsel for the many parties.

Jui Li and several other defendants were originally represented by Robert Kalec. In October 2013, Latham & Watkins ("Latham") which already represented defendant Gordon Auto Body Parts, took over representation of Jui Li and the other defendants represented by Kalec.

In February 2015, Latham moved to withdraw as Jui Li's counsel. As grounds for the motion, Latham stated that Jui Li owed it a substantial sum of money, had stopped paying its bills, and refused to follow its advice on material matters thus creating irreconcilable differences. *See* Latham & Watkins' Expedited Mot. to Withdraw (ECF No. 549). I was concerned by Latham's motion on two counts. First, I wanted to ensure that Jui Li was treated fairly and not left in the lurch, and second, I did not want the progress of the case to be disrupted by having an unrepresented Taiwanese defendant. *See* Feb. 6, 2015 Status Conf. Tr. at 20, 23 (ECF No. 584).

On February 6, all parties participated in a telephonic status conference at which we discussed Latham's withdrawal motion. Latham expanded on its reasons for requesting to withdraw, stating that there had been a "breakdown in communication" with Jui Li, that their attorney-client relationship "ha[d] deteriorated immensely," that Latham was "unable to get answers" from Jui Li, and that Jui Li would not allow Latham to prepare its representatives for depositions. *Id.* at 9, 16. Based on Latham's representations in its motion and at the status conference, I became concerned that Jui Li might not obtain new counsel. *Id.* at 25. I set up a phone conference with Latham and Jui Li to give Jui Li an opportunity to respond to Latham's motion and to advise me as to its plans. *Id.* at 24, 40. To accommodate Jui Li and the time difference, I scheduled the conference to begin at 6:00pm CST and asked Latham to provide an interpreter so Jui Li's representatives could understand the proceedings. *Id.* at 30, 33. I also asked Latham to reach out to Jui Li's previous counsel to determine whether he would be willing to represent Jui Li again. *Id.* at 36–37.

The conference took place on February 12. I excluded plaintiffs from the call

3

because they could contribute nothing to the withdrawal issue and to protect Jui Li in the event that sensitive information was discussed. Feb. 12, 2015 Conf. Tr. at 6 (ECF No. 714). Latham and Jui Li's director of sales and marketing Richard Li appeared, an interpreter translated, and a court reporter transcribed the entire conference. At the conference, Latham explained that Jui Li was not taking its settlement advice or its "advice on all fronts." *Id.* at 13–14. I asked Jui Li a number of questions, but Li was unable to answer many of them and appeared not to be a decision-maker. Thus, I scheduled a second conference for February 13.

Jui Li's president and general manager appeared at the February 13 conference. Again, only Latham and Jui Li participated, an interpreter translated, and the entire conference was recorded by a court reporter. I asked Jui Li's representatives questions about the matters Latham had raised in its motion, including Jui Li's financial position and its refusal to take Latham's advice regarding settlement. Jui Li's representatives often did not respond or offered vague and uninformative responses. *See, e.g.,* Feb. 13, 2015 Conf. Tr. at 5, 10, 20, 22-23, 24 (ECF No. 586). I also asked about Jui Li's efforts to obtain new counsel and about whether Jui Li understood the importance of continuing to actively participate in the case. Again, Jui Li's representatives responded vaguely, *id.* at 6, 28, and did not explain what efforts they were making to find a new lawyer. They also indicated that they were unable to afford a new lawyer. *Id.* at 10. Jui Li's representatives left me with the impression that they did not grasp the importance of the case or of their finding a new lawyer.

On February 25, all parties participated in a telephonic status conference at which I expressed concern about whether Jui Li would hire new counsel and continue to actively

4

participate in the case, but I also expressed hope that I was wrong. See Feb. 25, 2015 Status Conf. Tr. at 10-11 (ECF No. 703). I granted Latham's motion to withdraw and directed Jui Li to obtain new counsel immediately *Id.* at 14. IPPs then asked me to rule on a motion requesting that requests for admissions they had issued to Jui Li to which Jui Li had failed to respond be deemed admitted. Given Jui Li's unrepresented status, I held the motion in abeyance. *Id.* at 16.

Several months later, in April, new counsel for Jui Li, Beck Bismonte & Finley LLP, appeared. In July, Jui Li asked me to recuse myself arguing that Latham had a conflict of interest and at the February 12 and 13 conferences had improperly disclosed privileged information about Jui Li's settlement position and its valuation of the case, and that such information tainted me creating an appearance of bias. As evidence of such appearance, Jui Li cited several statements I made including:

- My statement to Jui Li at the February 13 conference that, "[I]t is my strong opinion that they need to listen to their lawyer and to do what their lawyer advises them. And if they don't do that, I'm going to consider it bad faith on their part. Because it's one thing to say I don't have enough to pay a lawyer, but if they're gonna sort of stand, you know, use that as a way to kinda not participate in the case, I'm gonna consider that a kind of a defiance of the court, verging on contempt." Feb. 13, 2015 Conf. Tr. at 9.

- My statement at the February 25 status conference that, "I got the sense that these two guys from Jui Li weren't going to listen to anybody otherwise. Certainly not Latham. And I sort of – I sort of – I'm surprised even today that Miss Ho said that they had been in touch with another law firm. And I will be surprised if they actually retain another law firm. And I'll even be more surprised if they retain another law firm and pay any attention to what they tell them. I mean, my sense from my participation in this phone call is that you're dealing with guys that are just absolutely not living in the world that everybody else in the case is living in." Feb. 25 Status Conf. Tr. at 10–11.

- My statement at the February 25 status conference statement that, "Well, all I'm telling you is that it seemed to me – the feeling I got – it might be wrong. I hope it's wrong. The feeling I got is that any hopes of dealing in a

5

constructive, normal way with Jui Li, was sort of unrealistic." *Id.* at 11.

## II. Discussion

### A. Timeliness of Jui Li's motion

I first address plaintiffs' argument that Jui Li's recusal motion is untimely. A party may waive its right to bring a recusal motion if it does not file it in a timely manner. *Edgar v. K.L.*, 93 F.3d 256, 257–58 (7th Cir. 1996). Plaintiffs argue that Jui Li waited five months to file its motion making it untimely. Plaintiffs also cite cases where courts found periods of two or three months too long. *See Reed v. Lawrence Chevrolet, Inc.*, 14 Fed. Appx. 679 (7th Cir. 2001); *Da Silva Moore v. Publicis Grp.*, 868 F. Supp. 2d 137 (S.D.N.Y. 2012); *Katzman v. Victoria's Secret Catalogue*, 939 F. Supp. 274 (S.D.N.Y. 1996). In the cases plaintiffs cite, however, the party seeking recusal filed its motion after the judge ruled against it, which is not the case here. *See, e.g.*, *Reed*, 14 Fed. Appx. at 687 (concluding that plaintiff waived a recusal argument "because he failed to move for recusal until after the district court granted summary judgment"). Further, for two of the five months that Jui Li waited, it was unrepresented. Thus, I conclude that Jui Li's motion was timely.

### B. Merits

28 U.S.C. § 455(a) requires a judge to recuse "in any proceeding in which [his] impartiality might reasonably be questioned." The goal of the statute "is to avoid even the appearance of impartiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (internal quotations and citation omitted). Thus, recusal is required "whenever there is 'a reasonable basis' for finding an 'appearance of partiality under the facts and circumstances' of the case." *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985)

6

(quoting *SCA Servs., Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir. 1977)). A judge must remain mindful, however, that "needless recusals exact a significant toll" and "should exercise care in determining whether recusal is necessary, especially when proceedings already are underway." *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) (noting that "[a] change of umpire mid-contest may require a great deal of work to be redone and facilitate judge-shopping") (internal quotations and citation omitted).

Section 455(a) does not require recusal simply because a judge has formed an opinion, rather it only requires recusal if the "opinion is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that [the judge] ought not possess, . . . or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994).

The source of the information that forms the basis of the opinion is important. Opinions based on events occurring in the course of proper judicial proceedings "may be controverted or tested by the tools of the adversary process," *Edgar*, 93 F.3d at 259, and therefore are not a basis for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. However, where opinions are based on a source outside the course of proper judicial proceedings, this weighs on the side of recusal, since the information "can be neither accurately stated nor fully tested." *Edgar*, 93 F.3d at 259; *see also Liteky*, 510 U.S. at 554–55. Thus, where the source of information is extrajudicial, a party need not show a "deep-seated antagonism," *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012), but only that "a reasonable, well-informed observer could question the Judge's impartiality."

7

Case 2:09-cv-00852-LA   Filed 12/16/15   Page 7 of 15   Document 835

*In re United States*, 572 F.3d at 310.

**1. Source of information: Judicial or extrajudicial?**

In the present case, there is no question that the February 12 and 13 conferences with Jui Li and Latham concerning Latham's motion to withdraw were proper judicial proceedings. When a lawyer moves to withdraw as counsel, it is a proper judicial practice for a court to hold a conference with the lawyer and the client to ensure that the court hears the views of both sides and has all the information that the attorney and the client want to provide before deciding the motion. *See ISC Holding AG v. Nobel Biocare Finance AG*, 688 F.3d 98, 107 (2d Cir. 2012); *United States v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992).

The conferences were also proper judicial proceedings because a court reporter recorded them. *In re United States*, 572 F.3d 301 (taking "special note of the fact that no record was taken of [a] meeting" between the judge, the United States Attorney, and the Federal Defender); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 309 (3d Cir. 2004) (stating that a leading reason for being skeptical of a judge's ex parte communications with a panel of advisors is that the meetings were unrecorded); *Edgar*, 93 F.3d 256 (concluding that off-the-record briefings in chambers are extrajudicial because "[w]hat information passed to the judge, and how reliable it may have been, are now unknowable"). Because the proceedings were recorded, Jui Li has the ability to test anything that occurred, as it is now doing.

Further, it was proper of me to inquire of Jui Li about its disagreements with Latham, including its disagreements concerning the value of the case and settlement because

8

Latham had explained that the irreconcilable differences that it referenced in its motion involved these issues. Unless I brought these matters up, I would have had no way of knowing whether irreconcilable differences did, in fact, exist.

Jui Li concedes that the February conferences were proper judicial proceedings. Jui Li's Br. in Support at 12 (ECF No. 717). It, nevertheless, argues that the conferences were extrajudicial because Latham improperly disclosed privileged information. However, Jui Li cites no authority for the proposition that an attorney's disclosure of privileged information during a proper judicial proceeding renders the proceeding extrajudicial. The two cases it cites are inapplicable because, unlike the present case, they both involve a judge engaging in ex parte, off-the-record discussions of substantive issues with court-appointed experts. *See In re Kensington*, 368 F.3d at n.18 ("We agree with the *Edgar* court that off-the-record discussions on substantive issues in chambers constitutes 'personal' or 'extrajudicial' knowledge."). As discussed, the February 12 and 13 conferences with Jui Li and Latham were neither ex parte nor off the record nor were any substantive issues discussed.

Cases more analogous to the present case hold that the disclosure of privileged or confidential information in the course of proper judicial proceedings does not render the proceedings extrajudicial. *See ISC Holding AG*, 688 F.3d 98 (suggesting that a 10-minute conversation with a withdrawing attorney was not extrajudicial despite the facts that the attorney allegedly disclosed privileged information, the client was not present, and the conversation was not recorded); *Tripp v. Exec. Office of the President*, 104 F. Supp. 2d 30, 35–36 (D.D.C. 2000) (concluding that the court's in camera review of confidential documents and participation in ex parte hearings related to those documents was not extrajudicial because review of the documents was done "in the course of fulfilling its

9

judicial responsibilities"); *Dee v. Institutional Networks Corp*, 559 F. Supp. 1282, 1284–85 (S.D.N.Y. 1983) (concluding that an attorney's disclosure of privileged settlement information to the judge was not extrajudicial because "all of the facts that form the basis of [the] recusal motion became known to the Court while it was supervising pretrial discovery").

Thus, the source of the information to which Jui Li objects was not extrajudicial. Further, Jui Li does not contend that I have a deep-seated antagonism towards it. Thus, recusal under § 455(a) is not required. I would add only that I have no antagonism of any sort toward Jui Li. My only concern was that Jui Li would not retain new counsel, and I am pleased that it has.

**2. Reasonable observer standard**

In order to be thorough, I will assume in this section that the source of the information that Jui Li objects to was extrajudicial and ask whether, if so, § 455(a) requires recusal. If the source is extrajudicial, I must recuse myself if a reasonable person would perceive a significant risk that I will resolve the case on a basis other than on the merits. *See In re Mason*, 916 F.2d at 385. The reasonable observer standard is an objective one that asks "how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *Id.* at 386. Additionally, the standard is whether a reasonable person would perceive "a risk substantially out of the ordinary," not merely a trivial risk of impartiality. *Id*. Jui Li argues that during the February 12 and 13 conferences, Latham improperly disclosed privileged information about Jui Li's settlement position and valuation of the case and portrayed Jui Li in a negative light and that its

10

statements biased me, as indicated by my comments during those conferences and at a subsequent status conference.

First, in order to perceive a risk of impartiality, a reasonable person must conclude that my opinion of Jui Li was influenced by the allegedly extrajudicial information, i.e. Latham's comments at the February 12 and 13 conferences. *See In re Milwaukee*, 788 F.3d at 720 (noting that a judge must rely on the extrajudicial source). Here, no reasonable, well-informed observer would conclude that my opinion of Jui Li was influenced by Latham's allegedly improper statements. I made it clear both on February 13 and on February 25 that I did not care about Jui Li's settlement position or valuation of the case but rather was concerned about what efforts Jui Li was making to retain a new lawyer and how long it might take for Jui Li to do so. *See* Feb. 13, 2015 Conf. Tr. at 5 ("Well, that's certainly – [Jui Li has] a right to take that [settlement] position. But assuming then they're not going to settle and this case is – the litigation I guess will proceed, what are their plans and what are they going to do about getting a lawyer?"). *See also* Feb. 25, 2015 Status Conf. Tr. at 10 ("It doesn't matter whether there were, or there weren't, [settlement discussions.] . . . The only thing – the only point I wanted to make was first of all, if Jui Li gets another lawyer – . . ."). At all times, my concern was that having an unrepresented party, particularly one from Taiwan, would impede further progress in what was already a complicated and slow moving case.

Further, the record indicates that this concern stemmed from information which Jui Li does not challenge as extrajudicial or privileged, namely statements Latham made in support of its motion to withdraw before the February 12 and 13 conferences and statements Jui Li representatives themselves made during the conferences. The opinions

11

I expressed that Jui Li complains of, namely that Jui Li was "just absolutely not living in the world that everybody else in the case [was] living in" and that "I will be surprised if they actually retain another law firm" were not new; I expressed concerns about whether Jui Li understood the seriousness of the litigation, whether they would find another lawyer, and the impact that would have on entire case before the February conferences at issue. Feb. 6, 2015 Status Conf. Tr. at 25 ("I mean I guess my concern is it seems likely that . . . they probably won't even get a lawyer. They won't do anything."). These concerns were based on Latham's assertion in its withdrawal motion that Jui Li was not paying attorneys' fees and that Jui Li and Latham had irreconcilable differences and from Latham's representations at the February 6 status conference that Jui Li was no longer cooperating with them. *Id.* at 9.

At the February conferences, Jui Li's representatives' statements suggested that they failed to grasp the seriousness of the case or the importance finding a new attorney. It was not Latham's statements at the conferences that concerned me, but rather Jui Li's vague and uninformative responses to my questions, the impression it conveyed that it was doing little to obtain new counsel, and its statements that it could not afford a new lawyer. Jui Li's statements, not Latham's, heightened my concern about Jui Li's continued participation, and I indicated this to the parties at the subsequent status conference. *See* Feb. 25, 2015 Status Conf. Tr. at 10–11 (discussing "the sense I got from talking to *these people*," . . . *these two guys from Jui Li*") (emphasis added). Thus, a reasonable observer with this knowledge would conclude that my concern about Jui Li's participation in the case was not based on Latham's statements that Jui Li alleges were improper and therefore extrajudicial.

12

Second, recusal is only required if a reasonable person would perceive a significant risk that I will resolve this case on something other than the merits. *See In re Mason*, 916 F.2d at 385. Thus, when extrajudicial information does not go to the merits of a case, this weighs against recusal. *ISC Holding AG*, 688 F.3d at 108. Here, the allegedly improper information that Latham disclosed, Jui Li's settlement strategy and valuation of the case, does not go to the merits of the case which involves liability under federal and state antitrust laws. Thus, a reasonable, well-informed observer would not regard my receipt of this information as affecting my ability to fairly judge the merits of the case.

This conclusion is supported by the fact that my comments that Jui Li challenges do not indicate any view of the merits of the case but rather reiterate my concerns about Jui Li's participation and the effect that Jui Li's failure to obtain replacement counsel would have on case management. For example, Jui Li points to the following statement I made to Jui Li as evidence of bias: "[I]t is my strong opinion that they need to listen to their lawyer and to do what their lawyer advises them. And if they don't do that, I'm going to consider it bad faith on their part." *Id.* at 9. But immediately after, I stated, "Because it's one thing to say I don't have enough money to pay a lawyer, but if they're gonna sort of stand, you know, use that as a way to kinda not participate in the case, I'm gonna consider that a kind of defiance of the court, verging on contempt." *Id*. In this context, a reasonable observer would not perceive this as indicative of bias but rather as an attempt to address my concerns about Jui Li's continued participation in the litigation. *Liteky*, 510 U.S. at 555–56 ("A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune."); *In re City of*

13

*Milwaukee*, 788 F.3d 717, 722–23 (7th Cir. 2015) (concluding that "[e]ven a sharply critical comment" by the judge does not justify recusal because "[a] judge's frank assessments in conferences . . . can be helpful in coping with [parties'] sometimes unrealistic" expectations and noting that effective case management does not warrant recusal "except in extreme cases").

A reasonable observer would also perceive statements I made at a subsequent status conference as merely reiterating these concerns and not as evidence that I cannot fairly judge the merits of the case. Jui Li cites the following comments at that status conference as indicative of bias: "the sense I got from talking to these people is that [hiring a new lawyer] would make no difference at all in terms of any speedy resolution of this case;" "I will be surprised if they retain another law firm and pay any attention to what they tell them;" "my sense from my participation in this phone call is that you're dealing with guys that are just absolutely not living in the world that everybody else in he case is living in;" and "[t]he feeling I got is that any hopes of dealing in a constructive, normal way with Jui Li, was sort of unrealistic." Feb. 25, 2015 Status Conf. Tr. at 10–11.

These comments merely re-state my ongoing concern that Jui Li did not grasp the seriousness of the litigation and the effect Latham's withdrawal would have on case management if Jui Li did not obtain replacement counsel. No reasonable, well-informed observer would perceive these comments as evidence of bias against Jui Li or bias concerning the merits of the case. *Liteky*, 510 U.S. at 555–56; *In re City of Milwaukee*, 788 F.3d at 722–23. This is especially true since I also said in connection with these statements that "I hope [I am] wrong," Feb. 25, 2015 Status Conf. Tr. at 11, and because later in that same status conference I ruled in favor of Jui Li, holding IPPs' motion regarding Jui Li's

14

failure to respond to requests for admissions in abeyance, *see In re City of Milwaukee*, 788 F.3d at 721 (concluding that the fact that the judge ruled in favor of the party seeking disqualification in the same order where he made the complained-of statement weighs against requiring recusal). Thus, even if Latham improperly disclosed privileged information and even if that renders the information extrajudicial, no reasonable, well-informed observer would perceive a significant risk of impartiality given the facts and circumstances of the case.

### C. Motions to Seal/Restrict

The parties have filed redacted versions of their briefs and have filed several motions to seal and/or restrict based on the confidential nature of the February conferences. I have already concluded that these transcripts should remain sealed given the sensitive nature of the discussions. Feb. 25, 2015 Order (ECF No. 594); Oct. 14, 2015 Minute Order (ECF No. 789). Because the briefs discuss these transcripts, I will grant the motions. However, this decision and order does not discuss details of the sensitive issues discussed in the February conferences; therefore it will be filed publicly.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that Jui Li's motion for recusal (ECF No. 716) is **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding motions to restrict (ECF Nos. 715, 741, 747, and 758) are **GRANTED**.

Dated at Milwaukee, Wisconsin this 16th day of December, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge