# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Fond Du Lac Bumper Exchange, Inc., and Roberts
Wholesale Body Parts, Inc. on Behalf of Themselves
and Others Similarly Situated,

                    Plaintiffs,

     v.

Jui Li Enterprise Company, Ltd., et al.,

                    Defendants.

Case No. 2:09-cv-00852-LA

## MEMORANDUM IN SUPPORT OF
## DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT WITH AP AUTO PARTS INDUSTRIAL LTD., FORMERLY KNOWN
## AS AUTO PARTS INDUSTRIAL LTD., AND ITS WHOLLY OWNED SUBSIDIARY,
## CORNERSTONE AUTO PARTS, LLC

114871

# INTRODUCTION

Plaintiffs, on behalf of themselves and other members of a certified class ("the Class") of Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs"), respectfully submit this memorandum in support of their motion for an order granting preliminary approval of a settlement (the "Settlement") with AP Auto Parts Industrial Ltd., formerly known as Auto Parts Industrial Ltd.[1], and its wholly owned subsidiary, Cornerstone Auto Parts, LLC (collectively, "API" or "Settling Defendant").[2] To facilitate the Settlement, DPPs also ask the Court to direct dissemination and publication of notice to the members of the Class and set a schedule for final approval of the Settlement.

The Court granted certification of the following Class on June 24, 2016:

> All persons and entities in the United States, and its territories and possessions, that purchased AM Sheet Metal Parts directly from a Defendant between at least as early as January 1, 2003, and September 4, 2009 ("the Class Period."). Excluded from the Class are any judicial officer who is assigned to hear any aspect of this action, governmental entities, Defendants, co-conspirators, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co., Ltd.,* No. 09-CV-0852, 2016 WL 3579953, at *1 (E.D. Wis. June 24, 2016). The certified Class is coextensive with the Class contained in the Settlement Agreement. *See* Hartley Decl. Ex. A, Section A. 2.

The Settlement provides that API will pay USD\$3,250,000 for the benefit of the Class, which, after applicable Taiwan tax, shall result in a total amount to an Escrow Account in the United States of no less than USD\$2,600,000. In return for the payment, DPPs will release all claims asserted in this action against API.

---

[1] *See* Notice of Change of Party Name (ECF No. 1201).
[2] The Settlement Agreement, fully executed, is attached as **Exhibit A** to the accompanying Declaration of Jason S. Hartley ("Hartley Decl.").

This is the fourth and final settlement reached in the DPP case. On August 13, 2015, the Court granted final approval of settlements with Tong Yang Industrial Co. Ltd. and TYG Products Inc. (collectively, "Tong Yang Defendants") and Gordon Auto Body Parts Co. Ltd. in the amounts of $16 million and $9 million, respectively. Final Approval Order at 2, ECF No. 752. The Court also granted final approval of the settlement reached with Jui Li Enterprise Company, Ltd. ("Jui Li") for $3,350,000 on February 16, 2018. ECF No. 1151.

DPPs' Co-Lead Class Counsel believe that the API Settlement, reached only after many years of vigorous litigation and intensive arm's-length negotiations, is the best possible result for the Class given likely alternatives. As detailed below, the Settlement reflects experienced counsel's thorough consideration and balancing of all relevant circumstances, including the risk of appeals, the expense of further litigation against API, the financial condition of API, the relative strengths and weaknesses of the claims and defenses asserted by the parties, the substantial benefits obtained for the Class, and the uncertainty of enforcing a United States judgment in Taiwan.

For these reasons, the Settlement is well within the range of possible approval to justify notifying the Class Members and setting a final fairness hearing.

I.      **PROCEDURAL HISTORY**

        A.      **Consolidation of Actions.**

        This litigation began in September 2009 with the filing of two putative class actions against the Defendants on behalf of direct purchasers: *Vehimax International, LLC v. Jui Li Enterprise Co., Ltd., et al*., Case No. 2:09-6437 (C.D. Cal.) ("Vehimax") in the Central District of California; and *Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co. Ltd., et al.*, No. 2:09-cv-00852-LA (E.D. Wis.). Both alleged that Defendants violated Section 1 of the Sherman

Act by engaging in a horizontal conspiracy to fix prices and output of aftermarket automotive sheet metal parts.

On December 3, 2009, the Judicial Panel on Multidistrict Litigation denied a motion by Vehimax International, LLC, supported by the other parties, to transfer *Vehimax* to this Court for coordinated or consolidated pretrial proceedings. Order, ECF No. 8. As suggested in the Manual for Complex Litigation, counsel for Vehimax and Fond du Lac Bumper Exchange, Inc. ("Fond du Lac") then agreed that the *Fond du Lac* case, because it was more procedurally advanced, should be designated as the lead case. Accordingly, Fond du Lac filed a First Amended Complaint ("FAC") in this Court on January 8, 2010. ECF No. 32.

On May 4, 2010, this Court consolidated the two actions for all purposes and ordered that the FAC would be the operative complaint for both. ECF No. 63.

On February 2, 2011, Roberts Wholesale Body Parts Inc. ("Roberts") moved to intervene as a direct purchaser plaintiff. Roberts' Mot., ECF No. 152. The Court granted that motion and on March 29, 2011 ordered consolidation of DPPs' actions with actions brought on behalf of indirect purchasers. ECF No. 57. DPPs filed their Second Amended Class Action Complaint ("SACAC") on August 3, 2011. ECF No. 217. The SACAC became the operative complaint in this action, superseding the FAC.[3]

## B. Dispositive Motions.

On May 11, 2010, Defendants filed four separate motions challenging all or part of the First Amended Complaint ("FAC"). In one, API, Cornerstone, Gordon, Taiwan Kai Yih, and TYG Products moved to dismiss the FAC under Rule 12(b)(6) and under Rule 12(c) for judgment on the pleadings. ECF No. 71. In another, Taiwan Kai Yih, Cornerstone, Gordon, TYG

---

[3] Vehimax has since been dismissed as a Class representative. ECF No. 291.

Case 2:09-cv-00852-LA   Filed 04/23/19   Page 4 of 25   Document 1221

Products and API moved to dismiss the FAC under Rule 12(b)(1) and a provision of the Foreign Trade Antitrust Improvements Act (15 U.S.C. § 6a) for lack of subject matter jurisdiction. ECF No. 74. In the third, TYG Products moved for partial summary judgment on the claims against it. ECF No. 76. Finally, Defendants moved for partial summary judgment arguing that claims regarding sales of AM Sheet Metal Parts before September 3, 2005 were time-barred. ECF No. 71.

A week later, on May 18, 2010, Taiwan Kai Yih, Gordon, API, TYG Products, and Cornerstone sought a stay of discovery until the Court decided the pending motions. ECF No. 80. On June 17, 2010, after being served with the FAC, Defendant Jui Li filed its own 12(b)(6) and 12(b)(1) motions, and the next day it also moved for a stay. ECF Nos. 84, 86, 92.

On November 30, 2010, the Court denied all the dispositive motions. Decision & Order, ECF No. 129. On December 30, 2010, API and Cornerstone responded with motions to reconsider asking the Court to either grant their 12(b)(1) motions or certify both the 12(b)(1) and 12(b)(6) motions for interlocutory appeal. ECF No. 138. On March 4, 2011, Gordon brought a motion seeking the same relief. ECF No. 162. The Court denied the motions on July 6, 2011. ECF No. 201.

### C.    Document Discovery and Discovery Disputes.

DPPs engaged in extensive discovery for more than five years, serving their first requests on Defendants on April 12, 2010. The discovery process was protracted by numerous discovery battles, requiring DPPs to repeatedly move to compel discovery from Defendants. DPPs filed numerous motions to compel discovery or to enforce one of the Court's orders (not counting DPPs' numerous requests for discovery orders during the Court's monthly status conferences).

These include the following motions, all of which were fully briefed, supported by declarations and exhibits, and argued before the Court:

a. On May 13, 2011 DPPs filed a Motion to Compel Responses to Plaintiffs' First Set of Document Requests to Defendants (ECF No. 179);

b. On August 29, 2011 DPPs filed a Motion to Compel Rule 30(b)(6) Depositions of Defendants (ECF No. 229);

c. On December 2, 2011 DPPs filed a Motion to Compel the Production of Documents (ECF No. 241);

d. On March 13, 2012 DPPs filed a Motion to Compel Defendants' Production of Discovery and for an Order Setting a Timetable for Production (ECF No. 270);

e. On October 11, 2012 DPPs filed a Motion to Compel Production of Documents by TYG Products, L.P., and for Sanctions (ECF No. 320);

f. On December 5, 2012 DPPs filed a Motion to Enforce Court Orders and to Compel the Immediate Production of Electronic Files from Defendants (ECF No. 335);

g. On November 22, 2013 DPPs filed a Motion for Sanctions and to Compel the Immediate Production of Defendants' ESI and Other Appropriate Relief (ECF No. 410);

h. On February 27, 2014 DPPs filed an Expedited Motion Pursuant to Civil Local Rule 7(h) to Compel the Production of Documents (ECF No. 447);

i. On April 24, 2015 DPPs filed a Motion for Evidentiary Relief Under Fed. R. Civ. P. 37(b) Due to Defendants' Discovery Failures (ECF No. 621);

j. On June 5, 2015 DPPs filed a Civil Local Rule 7(h) Expedited Nondispositive Motion Regarding Depositions of Jui Li Defendants (ECF No. 681); and

k.  On June 20, 2016 DPPs filed a Motion for Leave to Take Fed. R. Civ. P. 30(b)(6) Deposition (ECF No. 906).

The motions were either granted in whole or in part by the Court or were reserved pending further attempts by the parties to resolve their disputes.

In addition to document discovery propounded on Defendants, DPPs subpoenaed documents from several third parties, including KerenOr Consultants (Defendants' jointly-retained consultant); the Auto Body Parts Association (a U.S. aftermarket automotive sheet metal parts trade association); the Certified Automotive Parts Association (an aftermarket auto parts certification organization); and Kenneth J. Rubin (counsel for Superior Production Partnership in *Superior Production Partnership d/b/a PBSI v. Gordon Auto Body Parts Co.*, 2:06-cv-916 (S.D. Ohio)).  DPPs negotiated with counsel to the third parties regarding the scope of the *subpoenas deuces tecum.*  DPPs inspected the documents produced by KerenOr Consultants and the Auto Body Parts Association in Washington, D.C. and Houston, Texas, respectively.

DPPs propounded seventeen sets of interrogatories upon Defendants. DPPs met and conferred extensively with Defendants regarding their interrogatory responses and contested several of Defendants' interrogatory responses. They also propounded requests for admission to API.  Likewise, DPPs, responded to four sets of Defendants' document requests and produced documents from the named plaintiffs to Defendants.  DPPs also responded to seven sets of Defendants' interrogatories to Direct Purchaser Plaintiffs, including responses to Defendants' onerous contention interrogatories.

**D.  DPPs' Document Review.**

After Defendants failed to timely produce documents in discovery, DPPs spent numerous hours assisting Defendants Gordon, Tong Yang, Jui Li, and TYG Products in revising and

6

refining their ESI search methodology. DPPs negotiated and agreed upon keywords and a methodology for identifying documents that these Defendants indicated would locate documents responsive to DPPs' document requests and the Court's discovery orders. DPPs also assisted these Defendants by identifying document custodians that Defendants failed to identify or disclose.

DPPs reviewed hundreds of thousands of documents that Defendants ultimately produced in discovery. In doing so, DPPs established, organized, and managed a Relativity database of over nine hundred thousand documents, including Chinese-language business documents and extensive spreadsheets. DPPs trained and managed a team of document review attorneys, including bi-lingual Chinese-fluent attorneys. Through this process, DPPs hierarchized the review of Defendants' documents while identifying issues and deficiencies with Defendants' productions. DPPs identified and compiled Defendants' documents that support the allegations in the SACAC and translated key documents to use in depositions and to prepare for class certification and summary judgment.

### E. Deposition Discovery.

DPPs conducted or took part in numerous depositions in this litigation including Rule 30(b)(6) depositions of each of the Defendants and depositions of Defendants' executives and current employees. Depositions taken in the litigation include the following:

a. Rule 30(b)(6) deposition of API on February 14, 2012 in Taipei, Taiwan.

b. Rule 30(b)(6) deposition of Jui Li on February 15, 2012 in Taipei, Taiwan.

c. Rule 30(b)(6) deposition of Taiwan Kai Yih Industrial on February 16, 2012 in Taipei, Taiwan.

7

d.  Rule 30(b)(6) deposition of Gordon Auto Body Parts on February 17, 2012 in Taipei, Taiwan.

e.  Third party deposition of KerenOr Consultants on January 24, 2012 in Washington, D.C.

f.  Rule 30(b)(6) deposition of Cornerstone, Inc. on August 8, 2012 in Troy, Michigan.

g.  Rule 30(b)(6) deposition of TYG Products on August 9, 2012 in Troy, Michigan.

h.  Deposition of Henry Lin of API on August 26, 2014 in Taipei, Taiwan.

i.  Deposition of Jack Hsieh of API on August 27, 2014 in Taipei, Taiwan.

j.  Deposition of K.D. Cheng of API on August 28, 2014 in Taipei, Taiwan.

k.  Rule 30(b)(6) deposition of API regarding transactional data and amount of commerce on September 26, 2014 in Taipei, Taiwan.

l.  Deposition of Zhao Long Chen of API on September 29-30, 2014 in Taipei, Taiwan.

m.  Deposition of Sheila Tung of API on October 1-2, 2014 in Taipei, Taiwan.

n.  Deposition of Richard Wang of Gordon, on October 8-9, 2014 in Taipei, Taiwan.

o.  Deposition of Jones Lin of Gordon, on October 29-30, 2014 in Taipei, Taiwan.

p.  Deposition of Joseph Guan of Jui Li on November 3-4, 2014 in Taipei, Taiwan.

q.  Deposition of Angus Tai of Gordon on November 6-7, 2014 in Taipei, Taiwan.

r.  Deposition of Kevin Wang of Jui Li on November 13-14, 2014 in Taipei, Taiwan.

s.  Deposition of Richard Li of Jui Li on November 18-19, 2014 in Taipei, Taiwan.

t.  Deposition of Yong Kun Lin of API on November 22, 2014 in Taipei, Taiwan.

u.  Deposition of Lai-Fu Chiang of API on May 19-20, 2015 in Taipei, Taiwan.

v.  Deposition of Nicholas Scheid of Cornerstone on June 9, 2015 in Bloomfield Hills, Michigan.

w. Deposition of Jui-Huang Lu of Jui Li on July 21-22, 2015 in Taipei, Taiwan.

x. Deposition of Jui-Hui Lu of Jui Li on July 23-24, 2015 in Taipei, Taiwan.

Most of the depositions in this litigation required lengthy and expensive travel to Taiwan and required the assistance of an interpreter to translate between English and Mandarin Chinese. DPPs' preparation for these depositions involved the selection and translation of Defendants' Chinese-language business records into English for use as exhibits at the depositions.

**F.      Economic Analysis.**

Throughout the litigation, DPPs consulted with the esteemed antitrust economist, Dr. Russell Lamb.[4] Dr. Lamb examined the economics of the aftermarket automotive sheet metal parts industry and developed a class certification report and regression analysis demonstrating class-wide antitrust impact and damages to the Class Members.  DPPs also consulted Dr. Lamb and his staff throughout the course of this litigation on a wide range of substantive issues, including evidence common to the Class in support of Plaintiffs' claims, class certification requirements, and damages. This information was important in preparing pleadings, deposing witnesses, reviewing documents, briefing class certification and summary judgment, and evaluating the fairness of the Settlement to the Class.

Dr. Lamb interpreted Defendants' transactional data for use in his regression analysis. This process involved meet and confer teleconferences and numerous written correspondence between DPPs and Defendants to interpret and understand the fields and content of Defendants' transactional data. DPPs also engaged in an extensive attorney proffer process with the Tong Yang Defendants, Gordon, and Jui Li to understand the scope of those Defendants' transactional

---

[4] *See* Expert Report of Russell Lamb, July 14, 2015, ECF No. 712-1; Expert Reply Report of Russell L. Lamb, Ph.D., Nov. 24, 2015, ECF No. 813-1; Expert Surreply Report of Russell L. Lamb, Ph.D., Jan. 15, 2016, ECF No. 860-1; Expert Trial Report of Russell L. Lamb, Ph.D., Aug. 18, 2016, ECF No. 1061-1; and Expert Trial Reply Report of Dr. Russell L. Lamb, Dec. 20, 2016, ECF No. 1061-2.

data and their amount of commerce.  The results of the proffers were reduced to formal discovery responses which were verified by those Defendants.

**G.  Latham & Watkins' Motion to Withdraw as Counsel and Jui Li's Petition to the Seventh Circuit Court of Appeals.**

On February 2, 2015, Jui Li's then-counsel, Latham & Watkins LLP ("Latham"), filed an expedited motion to withdraw as counsel to Jui Li, citing Jui Li's dire financial situation, its resulting inability to pay its attorneys' fees, and a breakdown in the attorney-client relationship. ECF Nos. 549–550-1.  DPPs responded to the motion.  *See* ECF No. 559. Following a status hearing among all parties and the Court (ECF No. 583) and a hearing among Jui Li, Latham, and the Court (ECF No. 585), the Court granted Latham's motion. ECF No. 594.  On July 17, 2015, after Jui Li belatedly retained new counsel, Jui Li moved to disqualify the Court. ECF Nos. 716– 718-7.  DPPs opposed the motion. ECF Nos. 748–749-2.  The Court denied the disqualification motion. ECF No. 835.  By January 7, 2016, Jui Li filed under seal a Petition for Writ of Mandamus requesting that the Court of Appeals for the Seventh Circuit issue a writ of mandamus removing the presiding judge. *In re Jui Enterprise Co. Ltd.*, No. 16-1044, ECF No. 1 (7th Cir. 2016). On January 14, 2016, after examination of the petition and finding no reason the petition should be withheld from the public record, the Seventh Circuit ordered the clerk of court to place the petition in the public record. *Id.* at ECF No. 5. On January 29, 2016 the Seventh Circuit denied Jui Li's Petition for Writ of Mandamus. *Id.* at ECF No. 6.

**H.  Class Certification and Summary Judgment.**

On July 14, 2015, Direct Purchaser Plaintiffs filed their motion for class certification pursuant to Fed. R. Civ. Proc. 23. ECF Nos. 710-713.  Jui Li opposed the motion for class certification (ECF No. 785), retained an economic expert to oppose class certification (ECF No. 786-1), and requested an evidentiary hearing (ECF No. 832). On October 1, 2015 DPPs

presented their expert, Dr. Lamb, for deposition in support of class certification.  Likewise, DPPs

took the deposition of Jui Li's class certification expert on November 9, 2015.  On March 31,

2016 the parties appeared before this Court and participated in a class certification hearing. Mar.

31, 2016 Court Conf. Mins., ECF No. 895. On June 24, 2016, the Court granted Direct Purchaser

Plaintiffs' Motion for Class Certification, certified the Class, and appointed Jason S. Hartley

(currently of Hartley LLP) and Vincent J. Esades (Heins Mills & Olson, P.L.C.) as Co-Lead

Class Counsel and K. Scott Wagner (currently of Mallery & Zimmerman, S.C.) as Liaison Class

Counsel. ECF No. 910.

Following the Court's Decision & Order certifying the class, Jui Li petitioned the

Seventh Circuit Court of Appeals pursuant to Fed. R. Civ. P. 23(f) seeking appeal of the

decision. Defs.-Pet'rs' Pet., No. 16-8011 (7th Cir.), ECF No. 1. DPPs opposed Jui Li's petition.

Pls.-Resp'ts' Resp., No. 16-8011 (7th Cir.), ECF No. 5. The Seventh Circuit ultimately denied

Jui Li's petition to appeal.  Order, No. 16-8011 (7th Cir.), ECF. No. 6.

On March 30, 2017, Jui Li filed five separate motions for summary judgment, five

separate statements of fact, and eleven separate declarations in support of the summary judgment

motions.  Jui Li's Mots., ECF Nos. 1016, 1021, 1028, 1033, 1038. DPPs opposed each of Jui

Li's motions and submitted five oppositions and five statements of fact in support of their

oppositions. Class Pls.' Opp'ns, ECF Nos. 1057, 1059, 1062, 1064, 1066. Dr. Lamb also

submitted, under oath, his detailed Expert Trial Report and Expert Trial Reply Report to the

Court in conjunction with DPPs' opposition to Defendant Jui Li's motions for summary

judgment. *See* ECF Nos. 1061, 1061-1, 1061-2.  Contemporaneously, DPPs defended the

deposition of Dr. Lamb, their trial expert economist, and took the deposition of Jui Li's trial

expert economist. The Court denied Jui Li's motions for summary judgment on October 24, 2017. Decision & Order, ECF No. 1097.

## I.     API's Default Proceedings.

On January 5, 2017, API terminated its lawyers. On January 23, 2017, API's counsel filed a Verified Expedited Motion Pursuant to Local Rule 7(h) to Withdraw as Counsel for Defendants Auto Parts Industrial, Ltd. and Cornerstone Auto Parts, LLC, which the Court granted. ECF No. 995. After API failed to obtain new counsel by the Court-ordered deadline to do so, the Court entered a default against it. Aug. 8, 2017 Default Order, ECF No. 1088; Aug. 9, 2017 Clerk of Court Entry of Default, ECF. No. 1089.  In November 2017, API retained new counsel. *See* ECF No. 1108. Thereafter, API attempted to re-enter the litigation and to undo the default.  The parties thereafter engaged in repeated briefing and court conferences related to API's motion to set aside the default and motion to de-certify the Class; DPPs' motions to strike new expert reports and for default judgment; and both parties' positions on damages. *See, e.g.,* ECF Nos. 1116-1208. The parties then faced the prospect of protracted hearings, decisions, and appeals on issues related to default, default judgment, and damages. Hartley Decl. ¶¶ 7 – 9.

## II.    SETTLEMENT NEGOTIATIONS

Arm's length settlement negotiations with API took place over the course of years. In August 2014, API and DPPs engaged in mediation before Martin Quinn of JAMS in San Francisco, California.  Although the mediation was unsuccessful, DPPs and API continued settlement negotiations sporadically over the years. On March 31, 2016, API and DPPs engaged in mediation before this Court.  Thereafter, the parties, through counsel, continued to discuss settlement.  The largest obstacle to settlement consisted of API's abandonment of the litigation for nearly a year and its precarious financial condition. The status of API's financial condition

became more evident through the course of settlement negotiations as API produced additional evidence of its financial hardship. After a conference with the Court, API agreed to provide ten years of confidential financial information to Class counsel which was used, in addition to public sources, to evaluate API's ability to pay a settlement or judgement. *See* Hartley Decl. ¶¶ 10 - 11.

Following two mediations and numerous settlement discussions, the parties ultimately reached a settlement and entered into a fully executed Settlement Agreement on April 12, 2019. *See* Hartley Decl. Ex. A.

## III.    SETTLEMENT TERMS

The Settlement Agreement requires API to make six payments totaling $3,250,000 ("Gross Settlement Fund"). Settlement Agreement, Hartley Decl. Ex A ¶ 19. Under Taiwanese law, a withholding tax of 20% must be paid before the funds are deposited into a United States based escrow account.  Accordingly, the Settlement Fund that will be deposited into the United States based escrow account will be no less than $2,600,000 ("Settlement Fund"). *Id.* API will pay the settlement amount as follows: First Payment of USD$435,000 net wired to the United States escrow account within 90 business days of the signing of the Settlement Agreement;  Second Payment of USD$433,000 net wired to the United States escrow account no later than 6 months of the date of the signing of the Settlement Agreement; Third Payment of USD$433,000 net wired to the United States escrow account no later than 12 months of the date of the signing of the Settlement Agreement; Fourth Payment of USD$433,000 net wired to the United States escrow account no later than 18 months of the date of the signing of the Settlement Agreement; Fifth Payment of USD$433,000 net wired to the United States Escrow Account no later than 24 months of the date of the signing of the Settlement Agreement; Sixth Payment of USD$433,000 net wired to the United States Escrow Account no later than 30 months of the date of the signing of the

Settlement Agreement. *Id.* The Settlement Payments will be secured by a stipulated judgment under Taiwan law, which Plaintiffs could file in Taiwan if API failed to honor its obligations under the Settlement Agreement.

In addition, API has agreed to assist Plaintiffs in seeking a refund of the Taiwan tax if Plaintiffs pursue a refund. *Id*. ¶ 20.

Subject to the Court's approval, the cost of providing notice of the Settlement to the members of the Class and for claims administration may be paid directly from the Settlement Fund, none of which are recoverable by the Settling Defendant if the Settlement does not become final. *Id.* ¶ 22. Under the terms of the Settlement Agreement, any attorneys' fees, costs, expenses, or service awards awarded by the Court shall be payable from the Settlement Fund. *Id.* ¶¶ 22-23. Class Counsel will seek attorneys' fees of up to 33% of the total Settlement Fund, payable only as a percentage of the funds actually deposited into the U.S. based escrow account, and incentive awards of $10,000 each payable to the two Named Plaintiffs.

## IV.    ARGUMENT

Federal courts have developed a well-accepted procedure and specific criteria for approval of class action settlements under Rule 23(e). The process entails three steps:

1.    Preliminary approval of the proposed settlement;

2.    Dissemination of notice of the proposed settlement to the class members; and

3.    A fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which the parties may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. *See* 4 *Newberg on Class Actions* §§ 11.22 *et seq.* (4th ed. 2002) (describing class action settlement procedure).

In this motion, DPPs request that the Court preliminarily approve the Settlement and also approve their proposed notice program, which is substantially the same as the notice programs previously approved by the Court. This will allow the second step of the approval process, notice to all affected Class Members, to take place.

**A.    Because the Settlement Is Within the Range of Possible Approval, the Court Should Grant Preliminary Approval Under Rule 23(e).**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996). Indeed, "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (quotations omitted). Evaluations of fairness, reasonableness, and adequacy require that the facts be viewed in a light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d at 1199.

As the first step in the settlement approval process, the Court must decide whether to grant preliminary approval of the Settlement. To do this, the Court determines whether the Settlement is within the range of possible approval sufficient to justify sending notice to the Class and holding a final approval hearing. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). At this preliminary approval stage, "the court's task is merely to determine whether the proposed settlement is within the range of possible approval, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards."

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, *6 (N.D. Ill. July 26, 2011) (quotation omitted); *see also In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001)[5].

The Seventh Circuit has identified five primary factors for the Court to consider in deciding whether to preliminarily approve the Settlement. They are "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby*, 75 F.3d at 1199). These factors all support preliminary approval of the Settlement.

### 1. The Settlement Properly Considers the Strength of DPPs' Case.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d at 653 (internal citation and quotes omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility,* 270 F.R.D. at 347 (citation omitted); *see Isby,* 75 F.3d at 1200.

This factor also weighs in favor of preliminary approval. The Settlement provides $3,250,000 paid on behalf of the Class, which will result in a Settlement Fund of at least $2,600,000 following the mandatory Taiwanese withholding tax. The Class Members will be

---

[5] Only after notice to the Class and the fairness hearing will the Court decide whether to grant final approval of the Settlement. In so doing, the standard to be applied is whether the Settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1196; *E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985).

advised that the Class may be entitled to a tax credit of the 20% payment to the Taiwanese government to offset U.S. taxes, if any, due on the settlement proceeds. Further, API has agreed to assist Plaintiffs if they decide to seek a refund from the Taiwan government of the tax. This is a substantial recovery in view of the challenges of enforcing a judgment and potentially continuing to litigate this international price-fixing conspiracy case against API, which is located solely in Taiwan, is a privately held company, and is in financial distress.

The cash payout provided by the Settlement represents a valuable monetary benefit to the Class. In addition to this value, the Settlement obviates the need for DPPs to face the additional expense and risk of damages determinations, appeals, and the prospect of further litigation against API. Antitrust class actions are "notoriously complex, protracted, and bitterly fought," *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989). Extended appeals and the risk of continued litigation against API, "'would require the resolution of many difficult and complex issues,' and would 'entail considerable additional expense' . . . . ." *Isby*, 75 F.3d at 1199 (quoting *Taifa v. Bayh*, 846 F. Supp. 723, 727 (N.D. Ind. 1994)).

Although DPPs and their counsel are confident in their claims, an antitrust plaintiffs' case is fraught with issues that loom as potential obstacles to success. In the present case, DPPs face the likely determination of appeals regarding API's default and the resolution of conceptually and factually complex issues related to damages. The Settlement also recognizes there is no guarantee that a judgment against API would ultimately be sustained on appeal, that it would be successfully enforced in Taiwan, or that, even if successfully enforced, API would have the funds to pay it.

As detailed above, Co-Lead Class Counsel conducted a thorough investigation of the facts alleged; reviewed and analyzed hundreds of thousands of pages of documents produced by

Defendants; and took numerous depositions, including of Defendants and their executives and employees in Taiwan. The parties also participated in extensive settlement negotiations, with the assistance of a mediator and this Court, where the parties' respective positions were debated. Co-Lead Class Counsel also reviewed financial documentation provided by API reflecting API's financial condition. The settlement negotiations were informed by the Court's many rulings and a mature factual record which gave Co-Lead Class Counsel a thorough understanding of the strengths and weaknesses of DPPs' claims, as well as the difficulty of obtaining a more favorable result, particularly in light of API's current financial situation.

2. <u>The Substantial Complexity, Time, and Expense of Continued Litigation Also Favors the Settlement.</u>

The uncertainty of API's financial condition and the exigency of API's default, the determination of default damages, and extended appeals, as well as the cost and risk of attempting to enforce a judgment in Taiwan, make settlement favorable. The Settlement also avoids a significant portion of the heavy costs, enormous commitments of time by the parties and their counsel, and additional demands on the Court's limited resources. This complexity, time, and cost is the primary reason that settlements are so favored in antitrust cases.

3. <u>Little Opposition to the Settlement Is Anticipated</u>.

The third factor, the extent of opposition to the Settlement, cannot be fully assessed at this juncture. The Named Plaintiffs are the only members of the Class who currently know of the Settlement's terms. Class Members will be informed about the Settlement and their right to object only when they receive Court-approved notice. Given the strength of the Settlement and the support it enjoys from Co-Lead Class Counsel (discussed next), however, little opposition is expected. Hartley Decl. ¶ 18. Indeed, there were no objections to the three prior settlements in this case and only one request for exclusion. Hartley Dec. *Id.*

4. <u>Co-Lead Class Counsel Believe that the Settlement Is Favorable to the Class</u>.

Co-Lead Class Counsel and the other counsel of record representing DPPs, who have collectively prosecuted and settled hundreds of antitrust class actions, recommend approval of the Settlement as a favorable result for the Class. Hartley Decl. ¶ 19. *See Am. Int'l Grp.*, 2011 WL 3290302, at *8 (noting that court is "entitled to rely heavily on the opinion of competent counsel") (citation omitted). They base their considered opinion on their extensive experience in litigating similar cases and a careful assessment of all relevant factors bearing on settlement in this case, principally the ones identified in the preceding discussion. *Id*.

Chief among these factors was the financial condition of API and the possibility that a default judgment against it would not be paid as API has no assets in the United States. Even after the determination of damages and entry of a judgement against API, Plaintiffs would still be faced with enforcing a U.S. judgment in Taiwan against API, whose financial condition would not permit it to pay anything close to such a judgment. Large class members have advised counsel that their purchases from API have decreased over the last several years and that API has not substantially invested in new tooling to stay competitive or offer a reasonable likelihood of growth in the coming years. Hartley Decl. ¶ 19. This settlement allows the Class to recover from the Settlement without the uncertainty of seeking judgment against a financially precarious Defendant who, given the time needed to perfect and enforce a judgment in Taiwan, could very well be insolvent before any money would be obtained through that process.

5. <u>The Advanced State of this Case Has Afforded DPPs and Their Counsel Ample Information to Properly Evaluate the Settlement</u>.

As discussed above, the Settlement is a result of arms-length negotiations that took place after the DPPs' claims had been tested by several motions to dismiss, the parties had engaged in

contentious pre-trial proceedings and extensive discovery, class certification was litigated, and motions for summary judgment filed. Class Counsel's negotiation of the Settlement therefore had the benefit of thorough research and analysis of the myriad factual and legal issues informed by the Court's many rulings and a mature factual record.

**B.      DPPs' Proposed Class Notice Meets the Requirements of Rule 23(c).**

Notice of a proposed settlement must inform class members of (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg* § 8.32; *In re Packaged Ice Antitrust Litigation*, No. 08-MD-01952, 2011 WL 717519, at *5 (E.D. Mich. Feb. 22, 2011) (quoting *Newberg* passage); *see also City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-cv-188-JPG-PMF, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (stating Rule 23(e) notice contents "sufficient" with above elements) (quoting *AT&T Mobility*, 270 F.R.D. at 351). The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53.

Notice to class members must be "'the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Fed. R. Civ. P. 23(c)(2)); *City of Greenville*, 2012 WL 1948153, at *4 (same). Notice should be mailed to members who can be identified through reasonable effort, and other members should be notified by publication. *Id.*; *see Stoller v. Baldwin-United Corp.*, 650 F. Supp. 341, 343-44 (S.D. Ohio 1986) (approving combination of mailing and publication).

DPPs have again retained Kurtzman Carson Consultants, LCC ("KCC"), an experienced national class action notice provider and claims administrator, to assist with class notice for the

Settlement. The Court has previously appointed KCC as the claims/settlement administrator for all prior settlements in the DPP case. *See* ECF Nos. 619, 1101. KCC has experience in administering 6,000 class action settlements and its services include settlement funds escrow and reporting, class member data management, legal notification, call center support, and claims administration. KCC's Vice President of Legal Notification Services, Carla A. Peak, has formulated the following Notice Plan, which is substantially the same as the notice plans the Court previously approved.

               1.    <u>Individual Notice</u>.

A Detailed Notice will be sent to a list of approximately 465 previously identified Direct Purchaser Class Members. Prior to the mailing, the addresses will be checked against the National Change of Address (NCOA) database maintained by the United States Postal Service (USPS); certified via the Coding Accuracy Support System (CASS); and verified through Delivery Point Validation (DPV). Declaration of Carla A. Peak Regarding AP Auto Parts Industrial Ltd. Settlement Notice Plan and Notice Documents ("Peak Decl.") ¶¶ 8. Notices returned as undeliverable will be re-mailed to any address available through postal service information. *Id*. ¶ 9. Factoring in returned undeliverable mail, the Claims Administrator estimates that the individual mailings alone will reach virtually the entire Direct Purchaser Class. *Id*. ¶ 10.

2. <u>Publication Notice</u>.

Publication notice will be used to supplement and enhance the direct notice effort. Specifically, a Summary Notice will appear once in selected trade publications. *Id.* ¶ 11.

3. <u>Internet Notice</u>.

Internet advertising will also be used to provide notice to the Class. Eighty-nine and a half percent of the U.S. adult population has access to the internet using a home computer and 82.5% have accessed the internet in the past 30 days. Therefore, to further supplement and enhance the notice program, a combination of banner advertising and focused media outreach blogs will be used. *Id*. ¶ 12.

4. <u>Informational Press Release</u>.

13. An informational press release will be distributed over PR Newswire to media outlets, including newspapers, magazines, national wire services, television and radio broadcast media, and web publications throughout the United States. In addition, the press release will be distributed to Automotive Industry and Automotive Repair micro lists. *Id*. ¶ 13.

5. <u>Potential Free Media.</u>

In addition to the paid media described above, the Claims Administrator will also send a copy of the settlement press release to Collisionweek.com. Collisionweek.com does not accept paid advertising, however, it has agreed to review the press release. If the story would be of interest to their readers, they will work with the Claims Administrator to publish the press release or to print a short article. *Id.* ¶ 14.

6. <u>Additional Support</u>.

The informational website, www.AftermarketSheetMetalSettlement.com, will be updated to allow Class Members the ability to obtain additional information and documents about the

Settlement. The website address will be prominently displayed in the Notices, and accessible through a hyperlink embedded in the Internet Banners. The toll-free number will also be updated, allowing Class Members to learn more about the Settlement by speaking directly with a live operator. The toll-free number will be prominently displayed in the Publication Notice and Detailed Notice. *Id.* ¶¶ 15-16.

       7.    <u>Notice Design</u>.

The Notices have been designed to be "noticed" and understood by Class Members. Many courts, as well as the FJC, have approved notices that have been written and designed in a similar fashion. The Notices contain easy-to-read summaries of all of the key information affecting Class Members' rights and options. All information required by Federal Rule of Civil Procedure 23, as well the Manual for Complex Litigation, Fourth, has been incorporated in the notice documents. *Id.* ¶ 17. These notices are attached to the Peak Declaration at **Exhibit 1**.

The Notice Plan will effectively reach the Class, just as it did with the three prior settlements, by way of the individual notice effort alone. Not included in this reach percentage is the additional coverage that will be achieved through publication in industry related trade journals, internet banner placements on industry-related websites, and the distribution of the national and industry targeted press release. The Notice Plan has been designed to deliver "noticeable" Notices that will capture Class Members' attention and provide them with information necessary to understand their rights and options. *See id.*

## V.    PROPOSED SCHEDULE OF EVENTS

The Proposed Order submitted herewith sets forth the procedure and schedule for disseminating the Notice to the Class and for final approval of the Settlement.

## CONCLUSION

WHEREFORE, for the above stated reasons, DPPs respectfully request that the Court (1) grant preliminary approval of the Settlement; (2) direct dissemination of the proposed notice to the Class Members; and (3) adopt the proposed schedule for final approval of the Settlement.

Dated: April 23, 2019                                        Respectfully submitted,

s/ *Jason S. Hartley*
Jason S. Hartley
Jason M. Lindner
HARTLEY LLP
101 W. Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400 5832
Email: hartley@hartleyllp.com
            lindner@hartleyllp.com

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

*Direct Purchaser Plaintiffs'*
*Co-Lead Class Counsel*

K. Scott Wagner (SBN 1004668)
MALLERY & ZIMMERMAN, S.C.
731North Jackson Street, Suite 900
Milwaukee, WI 53202
Telephone: (414) 727-6270
Email: swagner@mzmilw.com

*Direct Purchaser Plaintiffs'*
*Liaison Class Counsel*